**W. C. PERRYMAN, Appellant,**

v.

**Earlie L. SIMS, Appellee.**

**No. 733.**

Court of Civil Appeals of Texas, Tyler.

Feb. 21, 1974.

Rehearing Denied March 21, 1974.

John W. Key, Jr., Athens, for appellant.

No counsel for appellee on appeal.

MOORE, Justice.

Plaintiff, Earlie L. Sims, a tile contractor, instituted this suit against defendant, W. C. Perryman, to recover the sum of $1,819.10 for the balance allegedly due upon an oral contract for certain tile work performed in remodeling defendant's residence, and in the alternative sought a recovery in quantum meruit. Plaintiff prayed for a recovery of the debt; foreclosure of the statutory mechanic's and materialman's lien on the property in question; and for a reasonable attorney's fee. Defendant denied liability alleging that the work had not been performed in a good and workmanlike manner and prayed for an off-set in the amount of $1,242.-33. After a trial by jury, the trial court entered judgment for the plaintiff in the amount of $1,207.55, together with attorney's fees in the amount of $400.00, and ordered a foreclosure of the mechanic's and materialman's lien. After defendant's motion for new trial was overruled, he perfected this appeal. The parties will be hereinafter referred to as they were in the trial court.

The case was submitted to the jury on a charge containing six special issues. In response to the special issues the jury made the following material findings, to-wit: (1) plaintiff substantially performed his contract, (2) the agreed contract price for the work was $2,918.50, (5) the work performed by the plaintiff was not done in a good and workmanlike manner, and (6) the cost of correcting the defects resulting from plaintiff's failure to complete the work in a good and workman like manner amounted to the sum of $692.95.

By his pleadings, the defendant admitted the work was performed upon an oral contract and makes no complaint of the jury's finding on Special Issue No. 2 establishing that the agreed contract price amounted to $2,918.50. It is admitted by both parties that defendant advanced the plaintiff the sum of $1,018.00 on the contract and is therefore entitled to a credit of such amount. Neither party makes any complaint of the jury's verdict in response to Special Issue No. 6 finding that the cost of correcting the defects caused by plaintiff's failure to complete the work in a good and workmanlike manner amounted to $692.95. Thus, after deducting the cost for repairing the defects and the amount already paid from the contract price, the trial judge concluded that under the verdict plaintiff was entitled to recover the sum of $1,207.55 in damages for breach of the contract.

Defendant seeks a reversal by four points of error. By his first and fourth points he seeks a reversal on the ground that the jury's finding in response to Special Issue No. 1 (that plaintiff substantially performed the contract) is contrary to the great weight and preponderance of the evidence.

In connection with Special Issue No. 1, the trial court gave the following explanatory instruction:

"You are instructed that the term 'substantial performance' means a performance of all important particulars, and permits only such omissions or deviations from the contract as are inadvertent and unintentional or not due to bad faith, do not impair the structure as a whole, and are remediable without doing material damage to other parts of the building in tearing down and reconstruction."

In Atkinson v. Jackson Bros., 270 S.W. 848, 38 A.L.R. 1377 (Tex.Com.App., 1925), the court held that the rule of "substantial performance" with respect to building contracts is recognized in this state. The opinion recites the general rule as expressed in Anson on Contracts as follows:

" 'The equitable doctrine of substantial performance has been adopted in com-

mon-law actions in many states, and particularly in the adjustment of rights under building contracts. If the contractor has acted in good faith and has substantially performed, he will be allowed to recover notwithstanding slight deviations from the contract, but his recovery will be diminished by the amount necessary to compensate for the deficiency.' "

The Commission of Appeals went on to say:

"To constitute substantial compliance the contractor must have in good faith intended to comply with the contract, and shall have substantially done so in the sense that the defects are not pervasive, do not constitute a deviation from the general plan contemplated for 'the work, and are not so essential that the object of the parties in making the contract and its purpose cannot, without difficulty, be accomplished by remedying them. Such performance permits only such omissions or deviation from the contract as are inadvertent and unintentional, are not due to bad faith, do not impair the structure as a whole, and are remediable without doing material damage to other parts of the building in tearing down and reconstructing."

Plaintiff testified that he completed the contract in accordance with the agreement. Defendant testified that the contract had not been complied with, and offered the testimony of two expert witnesses who testified that the quality of the work was "unacceptable" or "sub-standard." In rebuttal plaintiff produced two non-expert witnesses who testified that the work appeared to them to be satisfactory. Defendant insists that the testimony of the expert witnesses shows that the work performed by plaintiff was worthless, hence he argues that the finding that the contract was substantially performed is contrary to the great weight of the evidence. We do not agree. The expert testimony, as we view it, merely relates to the quality of the work.

The fact issue propounded to the jury in Special Issue No. 1 was not whether the work was performed in a good and workmanlike manner, but rather whether the work was so defective that it could not be remedied without doing material damages to the other parts of the building. The testimony of the experts does not, in our opinion, show that the work was worthless. There is no evidence that the deviations or omissions were not remediable or that the necessary repairs would cause damage to the other parts of the building. The expert testimony relied on by defendant is not, in our opinion, sufficient to raise a fact issue in this regard. After weighing all the evidence in the record, both that in favor of the finding as well as that against the finding on Special Issue No. 1, we are not prepared to hold that the judgment is against the great weight and preponderance of the evidence. Gulf, Colorado & Santa Fe Railway Company v. Deen, 158 Tex. 466, 312 S.W.2d 933 (1958).

By the second point defendant urges the jury's verdict will not support a judgment for the plaintiff based on substantial performance of the contract because of the further finding by the jury that the work was not done in a good and workmanlike manner. The defendant contends it is impossible for plaintiff to substantially perform his contract and at the same time fail to perform it in a good and workmanlike manner. We are not in accord with this proposition.

Plaintiff was not required to show undeviating conformity with every detailed specification in order to recover. Linch v. Paris Lumber & Grain Elevator Co., 80 Tex. 23, 15 S.W. 208, 213 (1891). In that case the Supreme Court said, "Such precision cannot, we think, be demanded in the performance of contracts, or any other affair of life." The court further held that if there is a substantial fulfillment, the builder should be entitled to receive the reward of his labor and it should be consid-

ered as a full performance as regards the builder's right to recover on the contract.

■ In suits to recover the contract price agreed upon for construction or repair of a building, where it appears that the contractor has in good faith substantially performed, he will be allowed to recover on the contract notwithstanding slight deviations therefrom, and the true measure of his recovery is the contract price less the damages sustained by his failure strictly to perform. Atkinson v. Jackson Bros., supra, 270 S.W. 848, 38 A. L.R. 1377; Graves v. Allert & Fuess, 104 Tex. 614, 142 S.W. 869, 39 L.R.A.,N.S., 591 (1912); Cooper Concrete Co. v. Hendricks, 386 S.W.2d 221 (Tex.Civ.App., Dallas, 1965, n.w.h.); 10 Tex.Jur.2d, Building Contracts, p. 25, sec. 21; Garland Grain Company v. Bailey, 393 S.W.2d 945, 948 (Tex.Civ.App., Dallas, 1965, writ ref., n.r. e.). Where the jury finds substantial performance, a further finding that the work was not performed in a good and workmanlike manner does not, in our opinion, prevent a recovery on the contract. In these circumstances, the measure of damages is the contract price less the amount necessary to compensate for the deficiency. We think the trial court properly applied the foregoing rule in this case.

■ The final point of error complains of the action of the trial judge in refusing to grant a new trial on the grounds of jury misconduct. Defendant's first contention is that the foreman of the jury, R. W. Fuller, made unsworn statements to the jury while in the course of their deliberations which were harmful to the defendant. In connection with this point, the record shows that throughout the trial it was defendant's contention that plaintiff used a "muratic" acid-type cleaner to clean surplus concrete from the tile which caused a grouting around the tile. Plaintiff denied using "muratic" acid. He testified he used a cleaner known as "Mr. Clean" which contained "muratic" acid but that the solution was diluted by adding equal parts of water. On the hearing for new trial, defendant contended that Mr. Fuller made a statement in the jury room to the effect that he used the same type of cleaner (Mr. Clean) every day and that it was only strong enough to cut grease. Upon being asked if he made such a statement, the juror answered: "No, I did not, John, I said the acid we used is a 'muratic' acid. All we use it for is to cut grease and kill roots." He later denied making such a statement to the jury. Moreover he specifically denied that he made any statement in the jury room of any personal experience with "muratic" acid, or that he told the jury he used it to cut grease and kill roots. He testified that the only discussion in the jury room with regard to the use of acid was confined to the testimony heard from the witnesses. Defendant argues that the juror's testimony constitutes an admission that he told the jury of his personal experience with "muratic" acid and therefore he contends that jury misconduct was shown as a matter of law. We do not agree. As we view it, the juror's testimony constitutes nothing more than self-contradictory statements. Under these circumstances, the credibility of the witness and the weight to be given his testimony was a matter which was exclusively within the province of the trial judge. In view of the fact that the trial judge overruled the motion for new trial, it must be presumed from such order that the court impliedly found the juror did not, in fact, convey his personal experience to the jury.

■ Defendant also contends that the juror, Fuller, was guilty of jury misconduct in making a personal inspection of defendant's residence during the course of the trial. Defendant testified that later one afternoon while the trial was in progress, he observed Fuller sitting in a pickup truck parked in the driveway in front of his residence, and that when he went to the door, Fuller drove away. The juror categorically denied making such trip. Thus, the testimony in this regard is in direct conflict. Under these circumstances

the question of whether jury misconduct occurred becomes one of fact. The trial court, after hearing the testimony, impliedly resolved the conflict in favor of the plaintiff when he overruled the defendant's motion for new trial. It is well settled that this court is bound by such implied finding. Rule 327, Texas Rules of Civil Procedure; Barrington v. Duncan, 140 Tex. 510, 169 S.W.2d 462 (1943); Moses v. Adams, 428 S.W.2d 131 (Tex.Civ.App., Beaumont, 1968, ref., n.r.e.).

The judgment of the trial court is affirmed.