Alan BALDWIN, d/b/a Alan Baldwin, Builder, Appellant,

v.

Roland D. SMITH, Appellee.

No. 1259.

Court of Civil Appeals of Texas, Tyler.

Aug. 16, 1979.

Rehearing Denied Sept. 20, 1979.

**626**

James R. Meyers, Robinson, Felts, Meyers, Starnes & Latting, C. Robert Dorsett, Austin, for appellant.

Kirk Kuykendall, Lockhart, Kuykendall & Jones, Austin, for appellee.

MOORE, Justice.

The principal question involved in this case is whether the Texas Deceptive Trade Practices-Consumer Protection Act [1] applies to a building and construction contract which has been substantially performed.

On September 9, 1976, appellant, Alan Baldwin, d/b/a Alan Baldwin, Builder, entered into a written contract with appellee, Roland D. Smith, to construct a house on land owned by Smith. Under the terms of the contract Baldwin was to construct the house in a good and workmanlike manner according to plans and specifications supplied by the Veterans Administration for and in consideration of the sum of $31,300. This suit arose when Baldwin, the builder, instituted suit against Smith for, among

---

1. Texas Business and Commerce Code Secs. 17.41 to 17.63 (Vernon's Supp.1978) hereinafter referred to as the "Act."

other things, damages resulting from additional costs for "extras" in the construction of the house and for interfering with the completion of the house. Smith answered with a general denial and a counterclaim for damages alleging that Baldwin failed to construct the house in a good and workmanlike manner in accordance with the plans and specifications, and that Baldwin also breached the contract by failing to pay interim interest in the amount of $2,900. Smith further alleged that the conduct of Baldwin in failing to construct the house in a good and workmanlike manner and in accordance with the plans and specifications within the 180-day period as agreed under the terms of the contract, constituted a deceptive trade practice as defined by Section 17.46 of the Act. His prayer was for actual damages in an amount necessary to complete the house, for $2,900 interim interest paid by him, and for attorney's fees. Further, he prayed that his actual damages be trebled under the provisions of Article 17.50 of the Act.

After a trial before the court, sitting without a jury, the trial court rendered a take-nothing judgment against the builder, Baldwin. After having concluded that the builder had substantially performed the contract, the court entered judgment in favor of Smith on his counterclaim for the sum of $1,500 to cover the cost in remedying several defects and also rendered judgment in favor of Smith for the sum of $2,900 for interim interest paid by him. After finding that the total sum of $4,400 represented Smith's actual damages, the court found that the failure to remedy the defects and the failure to pay the interim interest were in violation of the Texas Deceptive Trade Practices Act. Accordingly, the court rendered judgment in favor of Smith for treble damages for the total sum of $13,200. In addition, the court entered judgment in favor of Smith for attorney's fees in the amount of $10,000, together with additional attorney's fees in the event the judgment was appealed. Appellant, Alan Baldwin, perfected this appeal.

We reverse and render in part; we reform in part; and as reformed, affirm.

The facts, for the most part, do not appear to be in dispute. On September 9, 1976, the parties entered into a Builder's and Mechanic's Lien Contract in which Baldwin agreed to construct a house for Smith according to the plans and specifications within 180 days for and in consideration of the sum of $31,300. Under the terms of the contract, Baldwin, the builder, agreed to build the house in a good and workmanlike manner according to the plans and specifications supplied by the Veterans Administration. Baldwin further agreed to pay and save Smith harmless from all interim interest. On the same date, Smith executed a promissory note to Baldwin in the amount of $31,300 payable within 180 days. Baldwin assigned the note to Mutual Savings Institution, with recourse, in order to obtain interim financing with which to build the house. The house was to be constructed on or before March 9, 1977. Baldwin commenced construction and by January 29, 1977, Mutual Savings Institution [2] estimated that the house was 98% complete. On that date Baldwin allowed Smith to move his furniture into the house. On March 12, 1977, three days after the expiration of the 180-day period, Smith and his mother began physical occupancy of the house. On March 28, 1977, some sixteen days after the expiration of the 180-day period for completion, Smith ordered Baldwin to leave the premises. Baldwin left on that date.

At the request of appellant Baldwin, the trial court filed extensive findings of fact and conclusions of law. Among the findings of fact the trial court found: (a) Baldwin, the builder, substantially performed the contract; (b) Baldwin failed to build the house in accordance with the plans and specifications in certain respects; (c) Baldwin failed to construct the house in a good

---

2. Smith subsequently joined Mutual as a party to the suit but settled with Mutual prior to the entry of judgment.

and workmanlike manner in certain respects; (d) Smith's cost of remedying the defects and completing the house in accordance with the plans and specifications was $1,500; (e) Smith did not accept the defects and deviations from the plans and specifications when he moved into the house on March 12, 1977, except the fireplace-size deviation; (f) Baldwin represented that the work to be done by him would be done in a good and workmanlike manner, which it was not, and Baldwin represented his work would be of a particular standing (V.A. approved) which it was not; (g) under the terms of the contract Baldwin agreed to hold Smith harmless from any obligation to pay interim interest; (h) Smith paid interim interest accruing on the note after the 180-day period expired in the amount of $2,900; (i) that the sum of $10,000 would be a reasonable and necessary attorney's fee for the prosecution of Smith's claim under the Deceptive Trade Practices Act; (j) that the sum of $2,500 would be a reasonable attorney's fee to prosecute the case through the Court of Civil Appeals, $1,000 if application for writ of error is filed, and $500 if the writ is granted.

Under the conclusions of law, the trial court concluded, among other things, that: (a) the damages of $1,500 as costs of remedying defects and $2,900 in interim interest paid by Smith to Mutual were the only proved actual damages sustained by Smith; and (b) that these damages should be trebled under the Act.

Other findings of fact and conclusions of law made by the court will be set forth in our discussion of the various points of error briefed by the parties.

Appellant attacks the judgment by seven points of error. No effort will be made in this opinion to discuss appellant's points in the order of their appearance in the brief.

Under the third point of error appellant urges that the trial court erred in awarding appellee damages in the amount of $1,500 for repairing the defects in the house. He contends that the evidence establishes that he fully performed his contract and repaired the defects complained of by Smith.

The question as to whether the contract was fully performed or was only substantially performed is one of fact to be determined by the trier of fact. 13 Am.Jur.2d Building and Construction, sec. 129 (1964). Appellant testified that he had corrected all of the defects and that the contract had been fully performed. In rebuttal, appellee called two witnesses who testified with regard to the condition of the house. According to the testimony of Gaylon Schulle, the structure was practically complete. He estimated the cost of correcting the defects would amount to $1,500. Another witness, Rhea Merritt, testified that the cost of repairing the defects would amount to $29,-000. Thus it can be seen that there was a sharp conflict in the testimony. The trial court obviously relied on the testimony of the witness Schulle, and disregarded the testimony of appellant and the witness Merritt. At most, the testimony as to whether the contract had been fully performed was conflicting. The trial court found that the contract had been substantially performed and therefore ruled that Baldwin failed to carry his burden of establishing full performance.

In cases where specific findings of fact have been filed and a statement of facts is also brought forward, the findings made by the trial court will be sustained if there is any evidence to support them. 4 McDonald, Texas Civil Practice, 16.10(b), p. 29 (1971); *Arnold v. Caprielian,* 437 S.W.2d 620, 625 (Tex.Civ.App.—Tyler 1969, writ ref'd n. r. e.). There is ample evidence in the record to sustain the trial court's finding that the contract was only substantially performed, rather than fully performed. Consequently, we cannot agree with appellant's contention that the evidence establishes, as a matter of law, that all defects had been corrected and that the contract had been fully performed.

Appellant complains by his fourth point of the action of the trial court in awarding the appellee treble damages for the $1,500 found to be necessary to remedy defects in the house. It is appellant's position that since the court found that he substantially

performed the contract and actually did what he represented he would do, there is no evidence to support the trial court's finding that his conduct constituted a deceptive trade practice subjecting him to the provisions of the Act.

Section 17.46(a) of the Act provides: "False, misleading, or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." Subsection (b), sometimes referred to as the "laundry list," enumerates twenty separate acts as constituting false, misleading or deceptive acts or practices neither of which seem to relate to building and construction contracts.

■ The question presented appears to be one of first impression and as usual is not free of difficulty; however, in view of the unchallenged finding that appellant substantially performed the contract, we have concluded that the evidence fails to establish any false, misleading or deceptive act bringing appellant's conduct within the ambit of the practices declared to be unlawful.

In 10 Tex.Jur.2d, Building and Construction Contracts, sec. 21, the text reads:

"Substantial performance is regarded as full performance, insofar as the rule that performance is a condition precedent to the right to recover on the contract is concerned; a contractor who has in good faith substantially performed may sue under the contract.

"Although substantial performance does not mean an exact performance in every slight or unimportant detail, it means a performance of all important particulars and permits only such omissions or deviations from the contract as are inadvertent and unintentional, are not due to bad faith, do not impair the structure as a whole, and are remediable without doing material damage to other parts of the building in tearing down and reconstructing; when the necessary elements are not present the doctrine is not applicable even though the work is as good or as valuable to the owner as that agreed to be done."

It has been stated that there are three reasons for permitting recovery for substantial performance of a building contract: the owner of the land will necessarily receive the benefits of the contractor's labor and materials; it is next to impossible for a builder to comply literally with all the minute specifications in a building contract; and that the parties are presumed to have impliedly agreed to do what is reasonable under all the circumstances with reference to the subject of performance. 13 Am. Jur.2d, Building and Construction Contracts, sec. 41 (1964).

The above cited work states that while substantial performance is a relative term and the extent of the nonperformance must be viewed in relation to the full performance promised, it may be stated generally that, "there is substantial performance of such a (building) contract where all the essentials necessary to the full accomplishment of the purposes for which the thing contracted for has been constructed are performed with such an approximation to complete performance that the owner obtains substantially what is called for by the contract." It is further stated that "imperfections in the matters of detail which do not constitute a deviation from the general plan contemplated for the work, do not enter into the substance of the contract, and may be compensated in damages, do not prevent the performance from being regarded as substantial performance." 13 Am.Jur.2d, supra, sec. 43; *Linch v. Paris Lumber & Grain Elevator Co.,* 80 Tex. 23, 15 S.W. 208, 213 (1891); *Atkinson v. Jackson Bros.,* 270 S.W. 848, 850 (Tex.Com.App.1925, holding approved); *South Texas Building Co. v. Ideal Engineering, Inc.,* 402 S.W.2d 292 (Tex.Civ.App.—Houston 1966, writ ref'd n. r. e.), overruled on other grounds, *Tenneco Oil Co. v. Padre Drilling Co.,* 453 S.W.2d 814, 821 (Tex.1970); *Perryman v. Sims,* 506 S.W.2d 753 (Tex.Civ.App.—Tyler 1974, writ ref'd n. r. e.).

■ Appellant was not required to show undeviating conformity with every detailed specification in order to recover. *Linch v.*

*Paris Lumber & Grain Elevator Co.,* 80 Tex. 23, 15 S.W. 208, 213 (1891). In *Linch* the Texas Supreme Court said, "Such precision cannot, we think, be demanded in the performance of contracts, or any other affairs of life."

Upon applying the foregoing rules of law to the facts in the present case, we think the evidence compels the conclusion that appellant's representation that he would perform the contract in a good and workmanlike manner and in accordance with the plans and specifications excludes any notion that such representations were false and misleading when made, or that the appellant did not intend to comply with such representations. In law, the unchallenged finding that appellant substantially performed the contract simply means that appellant, in good faith, reasonably complied with the representations he made. In the absence of any proof establishing that a named defendant engaged in some type of false, misleading or deceptive trade practice, the Act simply has no application. In our view, the record is devoid of any proof showing that the appellant engaged in any false, misleading or deceptive act declared to be unlawful under either Section 17.46(a) or (b) of the Act.

Appellee maintains, however, that even if Section 17.46 is inapplicable, the judgment for treble damages for remedying the defects may be sustained on the basis of Article 17.50 of the Act which provides:

"(a) A consumer may maintain an action if he has been adversely affected by any of the following:

. . . . .

(2) A failure by any person to comply with an express or implied warranty;"

 A "warranty" is an agreement that though it refers to the subject matter of a contract is collateral to the contract's main purpose. It is not an essential part of the contract either by the agreement of the parties or by the nature of the case. 13 Tex.Jur.2d Contracts sec. 159 (1960). A breach of warranty does not end the contract or relieve the buyer from his obligation thereunder, but merely gives the buyer a right of action for damages resulting from the breach. *El Paso & S.W.R. Co. v. Eichel & Weikel,* 130 S.W. 922 (Tex.Civ. App.1910, writ ref'd). Building contracts are often made up of various statements and promises on both sides as differing in character and importance. The parties may regard some of these as vital, others as subsidiary or collateral. It is our view that in contracts of building and construction, the promise to build the structure in a good and workmanlike manner is not a mere collateral undertaking. It is a vital condition and goes to the very heart of the contract. It therefore amounts to a condition precedent. In the absence of a showing of substantial performance of such condition, the builder cannot recover on the contract. The owner is not bound to accept the work but may treat the contractor's failure to build the structure in a good and workmanlike manner as a breach of contract and the builder cannot recover on the contract unless he establishes that he substantially performed the condition. But the owner may, if he thinks fit, accept the structure and claim damages for the defects; in other words he may treat the breach of a condition as a breach of warranty. *El Paso & S.W.R. Co. v. Eichel & Weikel,* supra.

 Applying the foregoing principles to the facts of the present case, Smith, the owner, is in no position to treat a breach of a condition as a breach of warranty since the trial court found that Baldwin substantially performed the essential conditions of the contract. By making this finding, the trial court failed to find there had been a material breach of the condition to perform in a workmanlike manner. Hence in the absence of a breach of such condition, Smith is in no position to claim that by accepting the house he was entitled to treat a breach of condition as a breach of warranty under the provision of Sec. 17.50(a)(2) of the Act.

Although the trial court did find that Baldwin failed to perform the condition requiring the house to be constructed in a workmanlike manner, the finding was made to apply only to a limited number of items.

Thus, the finding merely explains why the court found substantial performance rather than full performance.

For the foregoing reasons, we have concluded that the appellee failed to discharge his burden of proof showing that his cause of action fell within the provision of either Section 17.46 or 17.50 of the Act. Consequently, that portion of the judgment awarding appellee treble damages for the cost of remedying the defects is reversed. Since there is ample evidence to support the trial court's finding that the cost of remedying the defects amounted to the sum of $1,500, the judgment will be reformed so as to award appellee the sum of $1,500 rather than treble damages in the amount of $4,500 as decreed by the trial court.

Under his first point of error appellant contends that the trial court erred in awarding appellee the sum of $2,900 for interim interest. Appellant makes no contention that he did not contract to pay the interim interest. The record shows he paid the interim interest for the first 180 days. It is his contention that the interim interest which accrued thereafter should be offset by the reasonable rental value of the house which appellee occupied free of any cost for approximately ten months before the permanent loan was closed. In our view the contention must be sustained.

Under the terms of the Builder's and Mechanic's Lien Contract, appellant agreed to pay and save appellee harmless from all interim interest. At the time of the making of the contract the parties contemplated that the house would be completed within 180 days, being March 9, 1977. Shortly after the Builder's and Mechanic's Lien note and contract had been executed, appellant assigned the same to Mutual Savings Institution for the purpose of obtaining interim financing. Appellant commenced work on the house and by January 1977 Mutual estimated that the house was 98% complete. With the consent of appellant, appellee moved his furniture into the house at that time. It is undisputed that appellee took complete possession of the house on March 12, 1977, and moved into the house along with his mother. On March 28, 1977, appellee ordered the appellant to leave the premises and he left on that date.

The evidence shows that the Austin representative of the Veterans Administration approved the house but after appellee contacted the Waco offices of the Veterans Administration, the approval was held up.

The record reveals that on or about the 8th day of February, 1978, while the trial of this cause was in progress, appellee made a settlement with Mutual Savings Institution under the terms of which permanent financing for the house was to be arranged by Mutual on precisely the same terms and conditions as the commitment which appellee had previously obtained from the Veterans Administration.

It is without dispute that the appellant paid the interim interest to Mutual up to March 9, 1977, and it is likewise without dispute that appellee paid Mutual the interim interest in the amount of $2,900 covering the period from March 9, 1977, until February 1978, when Mutual agreed to handle the permanent financing. The $2,900 in interim interest paid by appellee was included in his permanent financing note. It is undisputed that appellee had the use and occupancy of the house for approximately ten months commencing on March 12, 1977, and that during this period of time he made no payments other than for the amount of interim interest paid by him. Both parties concede that the reasonable rental value of the house during the period of time in question was $350 per month and the court so found. Without question appellant was liable for the $2,900 in interim interest paid by the appellee, because he stipulated in the contract that he would pay the interim interest and save appellee harmless therefrom. The question is whether the appellant is entitled to an offset for the reasonable rental value of the house during the period of approximately ten months until permanent financing was arranged.

Generally speaking, added interim interest costs during the construction period arising from the contractor's unexcused delay are compensable as direct damages.

*Roanoke Hospital Ass'n v. Doyle & Russell, Inc.,* 215 Va. 796, 214 S.E.2d 155 (1975).

The evidence shows that during the period from March 28, 1977, until February 1978, appellant was prohibited from going on the premises except for a 30-day period from November 28 until December 27, 1977, when the trial judge, on his own initiative, ordered the appellee to vacate the premises so that corrections could be made. Thus, we have a situation where an owner, who has prevented the contractor from completing the work, seeks to recover interim interest which he claims was caused by the contractor's delay in completing the contract. It is elementary that the owner is not entitled to recover damages brought about by his own wrong, regardless of whether the contract expressly so provides. 10 Tex.Jur.2d, Building and Construction Contracts, sec. 27 (1959); *Alexander v. Good Marble & Tile Co.,* 4 S.W.2d 636, 639 (Tex.Civ.App.-Eastland 1928, writ ref'd). For this reason we are of the opinion that appellee was not entitled to recover for interim interest.

Further, we do not believe the appellee is entitled to recover for the interim interest because of the doctrine of unjust enrichment. Even though we recognize the principle that by taking possession the owner does not necessarily waive his right to recover the cost of remedying defects and imperfections, the rule seems to be that the use and occupancy by the owner may show that he has derived some benefit from the work and render him liable to the builder to that extent. 17A C.J.S. Contracts § 514(2)b. (1963). There can be no doubt that the appellee derived substantial benefits by occupying the house for a period of ten months without paying anything except the $2,900 in interim interest. It is conceded by both parties in this case that the house had a reasonable rental value of $350 per month. To hold that appellee is entitled to recover all interim interest which he paid while occupying the house would be to hold that he could occupy the premises for ten months free of charge. This, in our opinion, would amount to unjust enrichment.

Generally, quasi-contractual liability for unjust enrichment is based upon the equitable principle that a person receiving benefits which are unjust for him to retain ought to make restitution or pay the value of the benefit to the party entitled thereto. 66 Am.Jur.2d, Restitution and Implied Contracts, sec. 3 (1973). In view of the fact that appellee derived a substantial benefit from appellant's work during the ten-month period he occupied the premises before permanent financing was arranged, equity and good conscience would require him to pay the value of such benefits. Consequently, even though appellant was liable for the payment of interim interest in the amount of $2,900, appellee was quasi-contractually liable to appellant for the payment of the reasonable rental value of the house for the ten-month period totalling $3,500. Thus, the appellee's liability more than offsets the liability of the appellant. For the reasons stated we are of the opinion that the portion of the judgment awarding appellee interim interest must be reversed.

Under the fifth and seventh points appellant seeks a reversal of the judgment awarding appellee a recovery for attorney's fees.

The record reveals that appellee's claim for attorney's fees is predicated solely on the provisions of the Deceptive Trade Practices Act. In view of the fact that we have determined that the evidence offered by appellee on his counterclaim fails to establish a cause of action under the provisions of the Act, it follows that there is no basis for the recovery of attorney's fees and therefore the portion of the judgment awarding attorney's fees is reversed.

This brings us to the cross-points brought forward by appellee. Under the first cross-point appellee maintains that the trial court erred in refusing to award him treble damages for the reasonable rental value of the house during the one-month period in which the court ordered him to vacate the premises so that corrective repairs could be made. The point is overruled.

The record reveals that the trial judge ordered the appellee to vacate the premises for the thirty-day period on his own initiative. This being the case we fail to see how appellant could be held responsible for depriving appellee of the possession of the house during such period of time.

██ By his second cross-point appellee contends that the trial court erred in refusing to enter judgment under the Deceptive Trade Practices Act for treble damages for $4,000 for the cost of replacing the damper in the fireplace.

After appellant's brick mason advised him that a five foot damper was not available, appellant relayed the message to appellee and asked him if he wanted to use a four foot damper. Appellee told the appellant to go ahead and use the four foot damper. Some time later, appellant testified appellee approached him and said he had found where he could obtain a five foot damper. After some discussion appellant offered to trade other "extra" work to make up the difference in the price. It was then agreed that an extra beam would be installed in the living room ceiling.

The trial court found that Smith accepted the fireplace when he moved into the house on March 12, 1977, and therefore waived the nonperformance of the contract in this respect. Smith concedes that he accepted the four foot damper, but argues that his acceptance was brought about by the false representation that the five foot damper was unavailable. In an effort to prove the representation was false, Smith called as a witness an employee of a manufacturing concern who testified that his company could manufacture a five foot damper provided it was furnished a sketch or drawing of the same. He further testified that his company was not in the business of manufacturing dampers and had never manufactured one. There is no evidence that a five foot damper was available in the open market in the Austin area. The trial court made no finding that a five foot damper was available. The trial court did find, however, that "Baldwin had told Smith a 5 ft. damper was not *available* when, in fact,

one could be *obtained*." [Emphasis ours.] Smith argues that the foregoing finding, together with the evidence, constitutes conclusive proof that his acceptance was brought about by fraud and therefore such acceptance does not constitute a waiver of nonperformance. We do not agree.

The word "available" as used in building and construction contracts means that the item was at hand or was accessible for use at the time. The fact that a damper might have been obtained on special order with proper drawings from a firm not in the business of making dampers does not mean that a five foot damper was available. Since there is no proof that a five foot damper was available at the time appellant made the statement, appellee's proof falls short of establishing fraud.

██ The only question left is whether the appellee accepted the fireplace. The rule is that where the intention of the owner in connection with his occupation and use of the structure is not clear, it is for the trier of fact to say, under all of the circumstances, whether there has been an acceptance of the work. 13 Am.Jur.2d, Building and Construction Contracts, sec. 56 (1964). To say the least, appellant's intention was not clear. There is ample evidence to support the trial court's finding and therefore the appellee will be held to have waived the performance of the contract insofar as the construction of the fireplace is concerned.

██ Smith's third and final cross-point reads as follows: "The trial court erred in not awarding Smith as assignee of Mutual, the reasonable attorney's fees to which Mutual would have been entitled had its cause of action not been assigned to Smith." We find no merit in this contention.

In order to understand the contention it will be necessary to consider the posture of the parties at the time Smith settled with Mutual Savings Institution. At that time Mutual was the holder of Smith's Builder's and Mechanic's Lien note for $31,300. The note had therefore been assigned to Mutual by Baldwin, with recourse, in order to obtain the interim financing. Thus, Smith

was primarily liable to Mutual on the note and Baldwin was secondarily liable. The Smith note provided for a 10% attorney's fee in the event the note was placed in the hands of an attorney for collection. After it had been placed in the hands of an attorney for collection, Smith settled with Mutual, thereby discharging his liability on the note as well as his liability for attorney's fees thereon. The assignment to Smith reads as follows: " . . . Mutual agrees to transfer and assign and does hereby transfer and assign . . . to Roland D. Smith any and all causes of action that Mutual has or might have against Alan Baldwin arising or resulting from or attributable to the . . . promissory note . . . payable by Roland D. Smith . . . ."

At this point it should be noted that Smith is not seeking indemnity against Baldwin for any attorney's fees paid by him in his settlement with Mutual for the simple reason that Smith paid Mutual no attorney's fees. He simply asserts that he had a cause of action for attorney's fees against Baldwin because Mutual, his assignor, had a cause of action against Baldwin prior to the settlement.

As we view the record, appellee's contention that the assignment from Mutual conferred him a cause of action for attorney's fees against Baldwin is untenable. When Smith settled with Mutual and released him from liability as the principal obligor on the note, Mutual obviously had no longer a cause of action for attorney's fees against Baldwin who was only secondarily liable on the note. Smith, as assignee, stepped into the shoes of Mutual and since Mutual had no cause of action against Baldwin, Smith would have none. Appellee's third cross-point is overruled.

In summary, we reverse that part of the judgment awarding appellee treble damages for the cost of correcting the defects and reform the judgment so as to award appellee a judgment for the sum of $1,500, rather than $4,500. With regard to that part of the judgment awarding appellee treble damages for interim interest and for

attorney's fees, the judgment is reversed, and judgment is hereby rendered that the appellee, Roland D. Smith, take nothing on his claim for interim interest and attorney's fees. In all other respects the judgment is affirmed.

Reversed and rendered in part; reformed in part; and as reformed, affirmed.