**David R. MURPHY, Appellant,**

v.

**James E. CANION and Nordling Chateau Apartments, Ltd., Appellees.**

**No. B14–88–416–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

July 19, 1990.
Rehearing Overruled Sept. 13, 1990.

Richard Frankel, Richard B. Miller, Thomas C. Wright, Houston, for appellant.

Kevin J. McEvily, Houston, for appellees.

Before ROBERTSON, SEARS and DRAUGHN, JJ.

## OPINION

SEARS, Justice.

David R. Murphy filed suit against James E. Canion for breach of a partnership agreement and breach of fiduciary duty. The trial court awarded Murphy $796,237.15 in damages, but offset $307,574.65 of that award. Both parties appealed. In nine points of error Murphy challenges the court's offset. In eight points of error Canion challenges the remainder of the judgment. Concluding the trial court erred only in offsetting the judgment, we modify the judgment and affirm.

Canion and Murphy formed a general partnership to conduct real estate business under the name of Canion/Murphy Interests. They executed a partnership agreement entitled "Articles of General Partnership," which provided in part:

> Both partners agree to devote their full-time efforts to the conducting of partnership business and agree that all personal earnings from personal services shall be included as partnership income.

That provision recognized that any real estate or other partnership business, which

either of the partners conducted during the term of the partnership agreement, should be for the joint account of the partnership and in which they would share equally.

Through his business associates and contacts, Canion developed real estate projects that were business opportunities of the Canion/Murphy partnership. Canion's fiduciary obligations to Murphy required him to make those deals available to the partnership. The four projects on which Murphy based his lawsuit were Copperfield, Eldridge Road, the Riggs tract, and the 2920 tract.

### Copperfield

During the Canion/Murphy partnership, HSC Investments informed Canion of a potential office building project later known as Copperfield Plaza, Ltd. Without telling Murphy, Canion used Canion/Murphy funds as a capital contribution to the project. Further, Canion filed for an assumed name in the name of Austral Investments. With the help of HSC and Jack Creel, Canion deposited funds from the closing at the Copperfield project into the Austral Investments account. Canion scheduled the closing of the Copperfield project to occur while Murphy was on vacation. When Murphy returned from vacation, he discovered the capital contribution withdrawal from the partnership account. Murphy confronted Canion and Canion gave notice that he was cancelling the partnership under a clause in the partnership agreement that allowed termination by a partner with ninety days notice.

### Eldridge Road

During the term of the partnership, Jack Creel told Canion that a 13.36 acre tract on Eldridge Road was for sale. Creel, as trustee, entered into an earnest money contract on the property and Canion issued a letter of credit for the earnest money. Canion was paid a commission at the closing which he applied toward the purchase price of the property. Approximately three weeks after termination of the Canion/Murphy partnership, Canion joined another partnership in connection with the Eldridge Road property and subsequently made a profit of $477,869.40 on that property.

### Riggs Tract

A ten acre tract of land previously owned by Mr. and Mrs. Thomas Riggs adjoins Canion's home in north Houston. After Mr. and Mrs. Riggs moved out of the state, Canion began to talk with them about the possible purchase of their property. By 1981, the Riggs and Canion had decided on a purchase price. However, instead of presenting this opportunity to the partnership, Canion asked O.B. Beard, III to purchase the land in Beard's name. Beard was used as a "straw man" and only his name appeared on all documents in connection with the purchase of the tract. However, Canion put up the earnest money and owned a fifty percent interest in the property. This real estate opportunity also developed during the Canion/Murphy partnership.

### FM 2920 Tract

Also in 1981, Canion signed an earnest money contract on behalf of Canion/Murphy interests for the purchase of a piece of real property near FM 2920 in north Harris County. He deposited funds from the Canion/Murphy partnership account as earnest money. When it became apparent that the partnership would be dissolved, Canion arranged with the seller of the property to postpone the sale until *after* the partnership terminated. Three weeks after the termination of the partnership, Canion arranged for Jack Creel to again act as "straw man" and purchase the property on Canion's behalf. The terms were identical to those in the original earnest money contract signed on behalf of the Canion/Murphy partnership. *At approximately the same time,* Creel then sold the property to a group of investors at a profit of more than fifty percent.

Murphy filed suit against Canion seeking damages for Canion's breach of the partnership agreement and breach of his fiduci-

ary duty. Additionally, Murphy sought to impose constructive trusts on properties that Canion acquired that were partnership opportunities. The jury found that Canion had breached both the partnership agreement and his fiduciary duties to Murphy, and the jury awarded Murphy actual and punitive damages. The jury also found that the value of the time, talent, and effort Canion contributed to the partnership opportunities after the partnership terminated was equal to his fifty percent interest in those projects. The jury valued fifty percent of the partnership at $195,170.43. The trial court awarded Murphy $195,-170.43 plus prejudgment interest as his one-half interest in the partnership, then awarded Canion $195,170.43 plus prejudgment interest as his one-half of the partnership. Canion, however, already had all of the properties for which the trial court awarded damages. In essence, the trial court ordered Canion to pay Murphy one-half of the interest Canion held in the property, then ordered Murphy to pay it back to Canion. This gave Canion one hundred percent interest in all the partnership instead of the one-half interest to which he was entitled. Murphy appeals from that ruling. Canion cross-appeals from the remainder of the judgment. We will first address Murphy's appeal.

■ In his second point of error Murphy claims the trial court erred in awarding Canion an offset for the value of his services because a wrongdoer cannot recover under the equitable doctrine of quantum meruit. The equitable doctrine of quantum meruit is based on the principle that one receiving benefits that are unjust for him to retain should make restitution or pay the value of the benefit to the party contributing the benefit. *Baldwin v. Smith*, 586 S.W.2d 624, 632 (Tex.Civ.App.—Tyler 1979) *rev'd on other grounds*, 611 S.W.2d 611 (Tex.1980). A party seeking quantum meruit must come to court with clean hands. *Truly v. Austin*, 744 S.W.2d 934, 938 (Tex. 1988). As a wrongdoer, Canion cannot rely on an equitable remedy to collect compen-

sation for time he spent on projects he kept secret from Murphy. Further, the jury found that Canion breached his partnership agreement with Murphy. A party who has breached a partnership agreement cannot recover from his partners in quantum meruit. *Id.*

Canion claims he did not plead quantum meruit, but merely pleaded an offset or recoupment. Canion's amended answer reads:

## CONTRIBUTION AND OFFSET

In the unlikely event that this Court is to award any interest in the above-described projects to the Plaintiff, equity requires that the Court also reimburse the Defendant for his time, talent and efforts which developed such projects all of which were extended after the termination of the partnership agreement. The Plaintiff would be unjustly enriched by the assertion of a constructive trust over these assets.

A claim of recoupment must be predicated on a factor that would vitiate a contract either in whole or in part at the time the contract was made. *Southern Pacific Co. v. Porter*, 160 Tex. 329, 331 S.W.2d 42, 45 (1960). The claim asserted by Canion is not a claim for recoupment, but clearly a quantum meruit pleading. Murphy's second point of error is sustained.

Our disposition of Murphy's second point of error pretermits any discussion of his remaining points of error.

Canion, in eight points of error, claims the trial court erred in (1) disregarding the jury's finding of estoppel and waiver; (2) impressing a constructive trust on Canion's property; (3) awarding attorneys' fees to Murphy; and (4) assessing exemplary damages. Canion further claims the evidence was legally and factually insufficient to support the jury's findings that his breach of fiduciary duty proximately caused damages to Murphy, and that Canion failed to pay a real estate brokerage commission to Murphy.

In his second and third points of error Canion claims the evidence is legally and factually insufficient to support the jury's answers to issues 3a and 3b. In answer to issue 3a, the jury found that Canion's breach of his fiduciary duty was a proximate cause of damages to Murphy on four transactions. In answer to issue 3b, the jury determined Murphy's damages were $95,500 on Eldridge Road, $25,000 on Copperfield Plaza, $37,500 on Riggs, and $37,170.43 on FM 2920.

With regard to legal insufficiency points, we will consider only the evidence tending to support the finding, viewing it in the most favorable light in support of the finding, giving effect to all reasonable inferences that may properly be drawn therefrom, and disregarding all conflicting evidence. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965).

Where the challenge to a jury finding is framed as an insufficient evidence point, the appellate court is to consider all the evidence in the case, both that in support of and that contrary to the finding, to determine if the challenged finding is so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

In considering appellant's insufficient evidence points, we must remain cognizant of the fact that it is for the jury, as the trier of fact, to judge the credibility of the witnesses, to assign the weight to be given their testimony, and to resolve any conflicts or inconsistencies in the testimony. *See Taylor v. Lewis*, 553 S.W.2d 153, 161 (Tex.Civ.App.—Amarillo 1977, writ ref'd n.r.e.). We may not substitute our judgment for that of the jury if the challenged finding is supported by some evidence of probative value and is not against the great weight and preponderance of the evidence. *Alford, Meroney & Co. v. Rowe*, 619 S.W.2d 210, 213 (Tex.Civ.App.—Amarillo 1981, writ ref'd n.r.e.).

When persons enter into fiduciary relationships, each consents to have his conduct toward the other measured by the finer standards of loyalty. *Johnson v. Peckham*, 132 Tex. 148, 120 S.W.2d 786, 788 (1938). As Justice Cardozo forcefully stated:

[C]opartners, owe to one another, while the enterprise continues, the duty of the finest loyalty. Many forms of conduct permissible in a workaday world for those acting at arm's length, are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior. As to this there has developed a tradition that is unbending and inveterate. Uncompromising rigidity has been the attitude of courts of equity when petitioned to undermine the rule of undivided loyalty by the 'disintegrating erosion' of particular exceptions. [Citation omitted] Only thus has the level of conduct for fiduciaries been kept at a level higher than that trodden by the crowd.

*Meinhard v. Salmon*, 249 N.Y. 458, 164 N.E. 545, 546 (1928).

Canion does not challenge the jury's finding that he breached his fiduciary duty to Murphy; he only challenges the proximate cause and damage findings. Canion argues that he received money for the properties *after* the dissolution of the partnership; therefore, the breach of his fiduciary duty could not have proximately caused Murphy's damages. We disagree.

On each of the four projects, Murphy presented evidence that the opportunity came to Canion during the life of the partnership. Murphy testified that Canion did not disclose the Eldridge Road, 2920, and Riggs opportunities before Murphy filed suit in September 1982. After hearing the evidence, the jury concluded that Canion breached his fiduciary duty to Murphy. They further found that, by breaching his fiduciary duty, Canion had proximately caused damages to Murphy. We hold that the jury's finding of proximate cause is supported by the evidence.

■ With regard to the damages findings on the Riggs tract, the evidence showed that Canion bought the property, subdivided it into four parts, sold three-fourths of the tract for $75,000 more than he paid for the entire tract, and kept the remaining one-fourth of the property. The jury found that Murphy was entitled to one-half of the profit, or $37,500.

Canion also bought the Eldridge Road property, subdivided it, and sold three-fourths of it for a profit of approximately $250,000, of which Canion received $191,000. The jury awarded one-half of the $191,000 to Murphy.

Further, there was sufficient evidence to support the jury's finding that Murphy sustained $25,000 in damages on the Copperfield Plaza project. At the Copperfield closing in July 1982, the purchasers agreed to pay Canion/Murphy $100,000 in fees. Half of the fee was paid and deposited by Canion in the Canion/Murphy bank account. The other fifty thousand of the fee was paid in January 1983 and kept by Canion. The jury found that Murphy was entitled to $25,000.

Canion bought and sold the 2920 property in December 1982 for a profit of $74,340.86. The jury awarded Murphy half of that amount, or $37,170.43. The evidence was legally and factually sufficient to support the jury's findings of proximate cause and damages. Canion's second and third points of error are overruled.

In his fourth point of error Canion claims the trial court erred in assessing exemplary damages because there was no basis for such an award. First, he argues that, because the trial court offset Murphy's actual damages, there is no basis for exemplary damages. Canion's argument lacks merit because we have found the offset of the judgment was improper. Murphy recovered actual damages on which exemplary damages may be based.

■ Second, Canion argues that the jury's finding that his breach of fiduciary duty was willful and intentional was not sufficient to support an exemplary damage assessment. Exemplary damages are recoverable when the injury is tainted with fraud, malice, or willful wrong. *Cole v. Tucker*, 6 Tex. 266 (1851). The issue concerning exemplary damages for breach of fiduciary duty is not whether there is an intent to injure, but rather whether the one with a fiduciary duty intended to gain an additional benefit for himself. *International Bankers Life Ins. Co. v. Holloway*, 368 S.W.2d 567, 583–84 (Tex.1963). Thus, malice is not a required element where there is an *intentional* breach of a fiduciary duty. Exemplary damages are proper where, as in this case, a fiduciary has engaged in self-dealing. *Texas Bank & Trust Co. v. Moore*, 595 S.W.2d 502, 510 (Tex.1980). Therefore, the jury found that Canion's breach of his fiduciary duty was willful and intentional. We hold the evidence is sufficient to support the assessment of exemplary damages. Canion's fourth point of error is overruled.

In their seventh and eighth points of error Canion and Nordling Chateau Apartments claim the trial court erred in awarding a real estate commission to Murphy. Murphy acted as a real estate broker for Nordling Chateau apartments and sold the apartment complex to Bruce Eckberg. For his work, Nordling Chateau agreed to pay Murphy a $100,000 commission. Murphy sued for the full amount of the commission.

■ Canion first argues that there was no consideration for the agreement to pay Murphy a real estate commission on the Nordling Chateau transaction. However, failure of consideration is an affirmative defense that must be raised by a verified pleading. *Widmer v. Stamps*, 663 S.W.2d 875, 881 (Tex.App.—Houston [14th Dist.] 1983, no writ); Tex.R.Civ.P. 93(j), 94. Appellees did not plead failure of consideration; therefore, they have waived that affirmative defense.

■ Canion next asserts that all conditions precedent to the payment of the commission had not been performed. The commission agreement states:

WHEREAS, DAVID R. MURPHY has caused the execution of an Earnest Money Contract for the sale of NORDLING CHATEAU APARTMENTS, ... the above Apartment Project was sold on May 1, 1978 to BRUCE ECKBERG, TRUSTEE for a total consideration of $2,600,000.00. Therefore, in consideration of the above, NORDLING CHATEAU APARTMENTS, LTD. hereby agrees to pay to DAVID R. MURPHY a Real Estate Brokerage Commission in the amount of $100,000.00. Said Commission to be payable as follows:

1. $40,000.00 in cash at the closing of the sale.

2. $60,000.00 to be payable over the life of the promissory note executed by Bruce Eckberg, Trustee on an annual basis on the anniversary date each year. Said amount to include interest at 8½%.

3. Payment of the deferred portion shall be contingent upon the payment by Bruce Eckberg, Trustee of the above note.

Murphy testified that none of the commission was paid directly to him. Testimony showed that forty thousand dollars of the commission was paid to the Canion/Murphy account. Murphy further testified that Eckberg made payments on the note for some time and later sold the property to another buyer. Canion testified that the note was paid from October 1980 to February 1984. Canion further admitted that the partnership was entitled to another $40,000 on the commission that had not been paid. We find this is sufficient evidence that the condition precedent of payment on the note had been met.

■ Canion next argues the answers to issues 10 and 12 were against the great weight of the evidence. In answer to those issues, the jury found that Nordling Chateau Apartments agreed to pay Murphy a real estate commission for the execution of an earnest money contract for the sale of the apartments, and further found that

Nordling Chateau owes Murphy $52,950. The real estate commission agreement clearly shows that Nordling Chateau agreed to pay the commission to Murphy. Further, the evidence shows that $40,000 was paid by Nordling Chateau to Canion/Murphy and another $40,000 was owed. However, no commission was paid to Murphy. We find the evidence is sufficient to support the jury's answers to issues 10 and 12. Canion's seventh and eighth points of error are overruled.

In points one, five, and six, Canion claims the trial court erred in (1) disregarding the jury's findings of estoppel and waiver, (2) impressing a constructive trust on Canion's property and (3) awarding attorney's fees to Murphy. Because Canion has raised these complaints for the first time on appeal, he has waived any error. *See PCP Gas Products, Inc. v. Farris*, 620 S.W.2d 559, 560 (Tex.1981). We overrule points one, five, and six.

We modify the trial court's judgment to delete offset of damages and prejudgment interest to Canion and, as modified, affirm the judgment.

## OPINION ON MOTION FOR REHEARING

James E. Canion, appellee and cross-appellant, files a motion for rehearing alleging this court erred in finding that certain points of error were waived. In our original opinion, we held that points of error one, five and six were waived because they were raised for the first time on appeal.

■ In point of error one, Canion complained of the trial court's error in disregarding the jury's finding of waiver. Canion directs this court to the judgment of the trial court which reflects that, in granting Murphy's motion to disregard the jury finding as to waiver, the court; "considered such motion together with all opposing motions and arguments of counsel for the defendants with respect thereto." Although such "opposing motions and arguments of counsel" are not a part of this

record, the judgment does reflect that the court considered them in arriving at its decision to disregard the jury findings. Therefore, we will address the point of error.

Waiver is an affirmative defense. Canion did not allege waiver in his pleadings or in his trial amendment; therefore, he has waived any right to submit an issue on Murphy's waiver. See TEX.R.CIV.P. 94. Only the controlling issues that are raised by the pleadings and the evidence should be submitted to the jury. TEX.R.CIV.P. 277. Further, a waiver can only occur when the party waiving the right has full knowledge of the facts or the acts of the party claiming waiver. The evidence shows that Murphy had no knowledge of the wrongful acts of Canion. Therefore, the trial court did not err in disregarding the jury's findings of waiver. Point of error one is overruled.

Canion also complains in the motion for rehearing that this court erred in finding that points of error five and six were waived because they were raised for the first time on appeal. Point of error five complains of the trial courts' placing a constructive trust on Canion's property, and point of error six complains of the award of attorney fees to Murphy. In his motion for rehearing, Canion does not direct this court to any place in the record where he complains of those acts to the trial court or calls the alleged error to the attention of the trial court. Canion does suggest however, that this court, in the interest of justice, should allow him to supplement the record to include certain documents that would allegedly refute this courts finding that he has raised these issues for the first time on appeal.

In order to preserve a complaint for appellate review, a party must present a timely request, objection or motion to the trial court in which specific grounds are stated for the desired ruling, and, the complaining party must obtain an adverse ruling on his request, objection or motion. See TEX.R.CIV.P. 52(a). This court has not received a motion to supplement the record, nor have we received any supplementation of the record which would present evidence to this court that the issues complained of were raised to the trial court prior to appeal. Therefore, the original opinion is correct in stating that cross-appellant Canion has waived points of error five and six. The motion for rehearing is overruled.