Lyn **HAWTHORNE, et al., Appellants,**

v.

Jack **GUENTHER, et al., Appellees.**

No. 09–93–221 CV.

Court of Appeals of Texas, Beaumont.

March 7, 1996.

Rehearing Overruled April 12, 1996.

Robert P. Wilson, San Antonio, for appellants.

Robert L. Page, Steele & Page, Conroe, Barry Snell, Bayne, Snell & Krause, San Antonio, Richard F. Bergner, Richard F. Bergner & Associates, Houston, for appellees.

Before WALKER, C.J., and BURGESS and STOVER, JJ.

## OPINION

STOVER, Justice.

This is an appeal from a judgment against appellant Lyn Hawthorne in the amount of $640,000.00 in actual damages and $850,000.00 in exemplary damages for breach of an alleged fiduciary duty owed by Hawthorne to appellee Jack Guenther.

### Facts

Jack Guenther, an attorney and a certified public accountant, was first involved in certain business investments with Lyn Hawthorne in the 1980's. Although he testified that he never acted as her attorney or her accountant, he did acquaint her with some of his investments, and she, likewise, informed him of some of hers. Each in turn invested in certain business ventures as the result of the shared information. As a result of some of these investments, Hawthorne sustained losses.

One business venture in which both Hawthorne and Guenther participated in the 1980's was the acquisition of a cellular franchise. The rights to cellular licenses in cities across the country were the subject of government-sponsored lotteries. In order to obtain the right to participate in the lottery, a person or entity had to pay a substantial filing fee and file an engineering report, along with certain other documents. If one acquired the right to a cellular phone market through the lottery system, that right could be traded or sold.

Initially, Guenther and a friend, Tom Turner, made the decision to participate in the lottery for cellular phone franchises. However, after Hawthorne approached Guenther about joining with her group to invest and participate in the lottery for cellular phone franchises, he, as well as Tom Turner, became part of the partnership.

The venture with Hawthorne involved six (6) partners who invested $12,500 each. Cellular Mole was the name of the partnership, and Lyn Hawthorne (then Lyn Noble) was the managing partner. According to the terms of the partnership, as evidenced in the letter written by Hawthorne to her partners, "the cost of that filing as well as any future

renumeration [sic] will be divided evenly among the [six partners]." The outcome of the lottery was extremely favorable to Cellular Mole; a $12,500.00 initial investment produced a $500,000.00 return for each partner.

In May 1985, Guenther contacted Hawthorne regarding information on Cellular Mole he needed to prepare his income tax return; there was no response at that time. In March 1986, Hawthorne informed the partners by letter of the markets they had won in the lottery. At that time, she made no mention of her later allegation that Guenther owed her money. In her letter dated January 1988, Hawthorne wrote Guenther that she mailed him a check of $10,153.71 for one of the markets to which the partnership had acquired the rights. In another letter dated April 16, 1990, Hawthorne declared that all of their interests in cellular markets had been sold and informed Guenther that he would receive a $150,000.00 check. None of the three letters mentions, or even alludes to, any alleged agreement to offset her investment losses against any earnings Guenther had in the partnership.

Guenther testified he was shocked to learn of the August 1989 sale of the largest cellular market which the partnership owned. Guenther was never consulted prior to the sale and was not informed of its occurrence until April 1990. When he received his K–1 form showing the amount earned by the partnership in that year, it reflected a partnership earning of $400,000.00 plus; however, Guenther's check from Hawthorne had been for only $150,000.00. Although his distribution totalled $150,000, he testified that, based on the K–1 form, he would have to pay taxes on $400,000.00 plus, even though he never received that much in income from the partnership.

Guenther further testified that proceeds from the sale of the cellular phone franchise were disbursed in August 1989 to Cellular Mole, the partnership, which, in turn, disbursed funds to two of the partners, namely Lyn Hawthorne and her husband, Monty Hawthorne. However, in Hawthorne's letter dated May 18, 1990, she did not disclose that some of the monies had already been disbursed, albeit not to Guenther. After receiving Hawthorne's May 18, 1990, letter, Guenther wrote her a letter, dated July 26, 1990, demanding an accounting of the proceeds received by the partnership and a date for disbursement of his share to him. Hawthorne did not respond to that request. Instead, in September 1990 she informed him for the first time that he was obligated to reimburse her for her losses in other investments in which both of them had participated. Guenther refused and filed suit.

The accountant, Bert Lynch, whose accounting firm prepared the records and created a set of books for Cellular Mole, testified that his firm prepared the tax returns for the partnership from 1986 through 1990. According to Lynch, the 1986 return reveals that three entities owed money to the partnership: Noble Toyota (of which Lyn Hawthorne was owner)—$189,500.00, Conroe Morning News (in which both Lyn and Monty Hawthorne were stockholders)—$23,000.00, and Lyn Hawthorne—$166,000.00. There were no promissory notes for these transactions, however. Mr. Lynch classified them as "advances." According to the 1990 tax return, Hawthorne owed $469,346.00 to the partnership. By the end of 1990, Guenther himself was owed $402,658.00, not including interest; and by February 15, 1992, the partnership owed Guenther $440,272.25. However, Hawthorne informed Guenther that he would not receive his distribution because he owed her money. According to Lynch's testimony, all of the assets of the partnership had been disposed of except for the note receivable of Hawthorne.

The appellant brings forward nine points of error:

## POINT ONE

The trial court erred in denying appellant's motion for continuance.

## POINT TWO

The trial court erred in conducting the trial despite appellant's absence.

## POINT THREE

The trial court erred in realigning the parties making appellant the defendant and appellee the plaintiff.

## POINT FOUR

The trial court erred in failing to bifurcate the exemplary damage issues from the trial on the merits.

## POINT FIVE

There is no evidence to support the finding that appellant breached her fiduciary duty.

## POINT SIX

There is insufficient evidence to support the finding that appellant breached her fiduciary duty.

## POINT SEVEN

There is no jury finding to support the award of exemplary damage.

## POINT EIGHT

There is no evidence to support the award of exemplary damages.

## POINT NINE

The amount of exemplary damages awarded is excessive and should be remitted by the appellate court.

In her first two points of error, appellant contends the trial court erred in denying her motion for continuance and in conducting the trial in her absence. On Friday, April 2, 1993, three days prior to trial, appellant was admitted into a hospital for substance abuse. On Monday, April 5, 1993, the first day scheduled for trial, appellant's attorney filed a motion for continuance, which was denied by the trial court. The trial was then conducted in appellant's absence.

■ The granting of a motion for continuance rests within the sound discretion of the trial court and will not be disturbed on appeal unless the record discloses a clear abuse of discretion. *State v. Wood Oil Distributing, Inc.,* 751 S.W.2d 863, 865 (Tex. 1988); *Villegas v. Carter,* 711 S.W.2d 624, 626 (Tex.1986). A trial court is not required to grant a motion for continuance just because a party is unable to be present at trial. *Humphrey v. Ahlschlager,* 778 S.W.2d 480, 483 (Tex.App.—Dallas 1989, no writ).

■ No motion for continuance can be granted except for sufficient cause, or by consent of the parties, or by operation of law. TEX.R.CIV.P. 251. Moreover, the motion must be verified or include a separate affidavit. *See* Rule 251. The sufficient cause alleged by appellant in the instant case was predicated upon the absence of a party in the suit and, of course, the want of that party's testimony. When a continuance is sought because of the unavailability of a party, the rules governing unavailability of witnesses apply. *See One 1984 Ford VIN # 1FABP43F7EZ116686 v. State,* 698 S.W.2d 279, 282 (Tex.App.—Fort Worth 1985, no writ); *Echols v. Brewer,* 524 S.W.2d 731, 734 (Tex.App.—Houston [14th Dist.] 1975, no writ). The absence of a party/witness is governed by TEX.R.CIV.P. 252.

If the ground of such application be the want of testimony, the party applying therefor shall make affidavit that such testimony is material, showing the materiality thereof, and that he has used due diligence to procure such testimony, stating such diligence, and the cause of failure, if known; that such testimony cannot be procured from any other source; and, if it be for the absence of a witness, he shall state the name and residence of the witness, and what he expects to prove by him; and also state that the continuance is not sought for delay only, but that justice may be done; provided that, on a first application for a continuance, it shall not be necessary to show that the absent testimony cannot be procured from any other source.

■ The record contains two motions for continuance, both being filed on April 5, 1993, the day of trial. In support of the first motion for continuance, appellant attached an unsigned affidavit of James Rhodes, allegedly a chemical dependency counselor. Being unsigned, the affidavit provides no support for the motion and is fatally defective. *Davis v. Sherrill,* 52 Tex.Cir.App. 259, 113 S.W. 556 (1908).

■ The second motion for continuance contains a hearsay recital by appellant's attorney of the matters allegedly told him by

James Rhodes; no affidavit, signed or unsigned, of Rhodes is attached. The hearsay allegations in the motion were objected to by appellee's attorney at the hearing on the motion. Although the motions for continuance were verified by Hawthorne's attorney, the verifications, if intended to rise to the level of an affidavit to support the hearsay statements in the motions, are insufficient, since they are based upon "knowledge and belief" rather than upon personal knowledge. *International Turbine Service, Inc. v. Lovitt*, 881 S.W.2d 805, 808 (Tex.App.—Fort Worth 1994, writ denied). *See State ex rel. Simmons v. Moore*, 774 S.W.2d 711, 714–715 (Tex.App.—El Paso 1989, no writ).

■ Also attached to both motions for continuance is the affidavit of H.M. (Monty) Hawthorne, husband of Lyn Hawthorne. According to Monty Hawthorne's affidavit, his wife, Lyn Hawthorne, "is now suffering from emotion [sic] distress and substance abuse and has been advised by her medical authority, and I know, of my own knowledge, that her condition makes it impossible for her to appear at the trial setting on April 5, 1993." There is nothing in Monty Hawthorne's affidavit to substantiate his hearsay statement that Lyn Hawthorne's medical authority advised that her condition made it impossible for her to attend the trial and Hawthorne is not shown to be medically qualified to make that determination on his own. If a witness or party is unavailable because of illness, the affidavit of a doctor should be attached. *Olivares v. State*, 693 S.W.2d 486, 490 (Tex.App.—San Antonio 1985, writ dism'd); *see Burke v. Scott*, 410 S.W.2d 826, 827 (Tex.Civ.App.—Austin 1967, writ ref'd n.r.e.). No such affidavit is attached.

In addition to the previous deficiencies in the affidavit and verification, the motion also fails to set forth the proposed testimony intended to be elicited from Lyn Hawthorne, as required by Rule 252. There is only the general assertion that she is the primary witness with personal knowledge of the circumstances which constitute the subject matter of the litigation. *See Connor v. Wright*, 737 S.W.2d 42, 44 (Tex.App.—San Antonio 1987, no writ). Neither the motion nor Mon-

ty Hawthorne's affidavit sets out one specific fact about which Lyn Hawthorne was to testify at trial. *Humphrey*, 778 S.W.2d at 484. Consequently, that part of Rule 252 is not satisfied.

■ Although appellant was not physically present at trial, her deposition, as pointed out by appellee's counsel in the hearing on the motion for continuance, had been taken and was available to be heard by the jury. Appellant's counsel objected that Mrs. Hawthorne's testimony at her deposition was cross-examination, since her testimony was elicited by appellee's attorney alone; her own attorney reserved his questions until time of trial. Even though her testimony was the product of cross-examination, it still was available for trial, and because of that availability, it cannot be said that Hawthorne had no opportunity to present her side of the case.

In following the guidelines set out in the Texas Rules of Civil Procedure, the trial judge acted in accordance with recognized guiding principles. He did not act arbitrarily or unreasonably. Points of error one and two are overruled.

In point of error three, Hawthorne contends the trial court erred in realigning the parties whereby Guenther was made the plaintiff and she the defendant. A procedural history of the case reveals that Hawthorne filed suit in Montgomery County against Guenther in October 1990. Prior to service of Hawthorne's suit on Guenther, he filed suit against Hawthorne in November 1990 in Bexar County. Guenther was able to effect service of citation upon Hawthorne in his suit prior to her service of her suit upon him. Ultimately, Guenther's suit against Hawthorne in Bexar County was transferred to Montgomery County where the two suits were consolidated. The Order of Consolidation stated that:

[The cases] are consolidated and merged for all purposes into one action, and that the consolidation action shall be entitled **LYN HAWTHORNE, CELLULAR MOLE AND H. MONTY HAWTHORNE vs. JACK GUENTHER INDIVIDUALLY AND FOR THE BENEFIT OF CELLU-**

LAR MOLE PARTNERSHIP AND VALERIE GUENTHER....

On the day of trial, Hawthorne's objection was as follows:

> [T]he plaintiff files this objection to the Court's ruling that disputes the prior Court's ruling in this case in which the second lawsuit which was filed, which is syted [sic] ... Jack Guenther versus Lyn Hawthorne was consolidated into the first lawsuit.... The Court had previously ruled in a motion to consolidate and an order consolidating the cases that Lyn Hawthorne was to be the plaintiff in all proceedings thereafter, and as I understand it this Court has now reversed that ruling.

Hawthorne alleges that the realignment ruling conflicts with the language in the Order Consolidating Actions in which the case was styled with Hawthorne as the plaintiff and Guenther as the defendant. Subsequent to Hawthorne's objection, the Court ruled the plaintiff would be Guenther.

In her argument on appeal, Hawthorne raises a plea in abatement issue, presumably because the court's stated reasons for realignment appear to be grounded in plea in abatement principles; those principles, however, are not at issue in this case. There is no record of Hawthorne's having filed a plea in abatement seeking to abate Guenther's Bexar County suit. Indeed, Guenther was actually the party who filed a plea of abatement, but there is nothing in the record to indicate any court action on it. Guenther's suit, rather than being abated, was consolidated with Hawthorne's suit in Montgomery County.

■ Although the trial judge may have stated the wrong reason for the realignment, we are not bound by an incorrect statement of the law as it applies to a case. Even though a trial court gives an incorrect reason for its decision, the trial court's assignment of a wrong reason is not reversible error. *Ace Drug Marts, Inc. v. Sterling,* 502 S.W.2d 935, 940 (Tex.Civ.App.—Corpus Christi 1974, writ ref'd n.r.e.). A trial court cannot abuse its discretion if it reaches the right result,

even for the wrong reasons. *Luxenberg v. Marshall,* 835 S.W.2d 136, 141–142 (Tex. App.—Dallas 1992, no writ).

■ Since the trial court consolidated two suits based upon the same occurrence, it was necessary for the court to decide which party would be aligned as plaintiff and which party as defendant. The basis for that decision is found in Tex.R.Civ.P. 265, 266, and 269. According to Rule 266, the plaintiff has the right to open and conclude both in adducing his evidence and in presenting his jury argument unless the burden of proof in the whole case rests upon the defendant; the rule is subject to certain exceptions which do not apply in this case. For the alignment of the parties in the instant case to be correct, Guenther must have the burden of proof on the whole case. A review of the record reveals that, although both parties were seeking affirmative relief in their pleadings, Guenther had the burden of proof in the issues in the charge.

As demonstrated by the questions submitted to the jury, Jack Guenther had the burden of proof on the whole case with the exception of those defensive issues submitted by Hawthorne. Specifically, it was Guenther's burden to prove that Cellular Mole was a partnership; that Lyn Hawthorne was the managing partner of Cellular Mole; that she breached her fiduciary duty, as well as her agreement to evenly divide remunerations from Cellular Mole among the six participants; and that Lyn and Monty Hawthorne engaged in a conspiracy. The only issues submitted on which Hawthorne had the burden of proof were two affirmative defense issues which, if answered in the affirmative by the jury, would have allowed her to retain Guenther's profits from Cellular Mole. Since Guenther had the burden of proof on the issues submitted to the jury, with the exception of the affirmative defense issues, the trial court was correct in realigning him as plaintiff.

Hawthorne cites *Amis v. Ashworth,* 802 S.W.2d 379 (Tex.App.—Tyler 1990, orig. proceeding [leave denied] ) in support of its contention that the trial court abused its discretion in realigning the parties. However,

*Amis* is distinguishable from the instant case. Although it too involved realignment of parties, which the Tyler court found to be an abuse of discretion, the procedural posture in *Amis* is different from the instant case.

*Amis* was an application for writ of mandamus rather than an appeal following a trial. The Tyler court stated as follows:

> Certainly, if the assault case went *to trial* with Brown [real party in interest] as plaintiff and [Amis] as defendant, [Amis] would be *hard-pressed to show prejudice or harm requiring reversal* because of the admitted tactical disadvantage of being cast before the jury as a defendant rather than a plaintiff, as opposed to seeking relief by way of mandamus to correct an alleged arbitrary and unreasonable act. Indeed, as Brown himself acknowledges in his brief, the entire trial record must be consulted by the appellate court to determine what harm, if any, resulted from a wrongful realignment of the parties. (emphasis added)

*Id.* at 382–383.

Unlike the instant case, the relators in *Amis* sought a writ of mandamus to compel the trial judge to vacate his order realigning the parties. Since the case had not proceeded to trial, the appellate court had before it for review the order realigning the parties, the *other* pleadings in the case, and argument of counsel. In contrast, the case before us on appeal is the product of a full-blown trial with a jury verdict and judgment. Thus, we have for review the entire record, including pleadings, trial, and judgment, to determine if there was error in the trial court's decision to realign and, if so, whether that error was harmful. It is this court's conclusion, based upon the pleadings, the entire trial, and jury questions in the charge, that Guenther had the burden of proof on the case and should have been aligned as plaintiff.

■ "A presiding trial judge has broad discretion with respect to the manner in which control of a trial is maintained, and an appellate court will not reverse a judgment for error relating to that area unless probable prejudice is shown." *Ocean Transport,*

*Inc. v. Greycas, Inc.,* 878 S.W.2d 256, 269 (Tex.App.—Corpus Christi 1994, writ denied). An appellate court may reverse a trial court for abuse of discretion only if, after searching the record, it clearly shows that the trial court's decision was arbitrary and unreasonable. *Simon v. York Crane & Rigging Co. Inc.,* 739 S.W.2d 793, 795 (Tex.1987); *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 242 (Tex.1985), *cert. denied* 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). This court is required to view the evidence in the light most favorable to the trial court's action and indulge in every presumption which would favor it. *Ocean Transport, Inc.,* 878 S.W.2d at 269.

In the instant case, appellant did not have the burden of proof on the whole case. With the exception of certain defensive issues which were submitted to the jury, appellee had the burden of proof. Therefore, the trial court did not abuse its discretion in realigning the parties and making Guenther the plaintiff.

■ Moreover, even if the court was in error in realigning the parties, no harm can be shown. Hawthorne objected to realignment on the grounds that it gave Guenther a significant advantage by allowing him to be first in adducing evidence and opening and closing jury argument. However, since neither the voir dire nor jury argument is in the record, this court has no knowledge of the contents of those portions of the trial and cannot, with certainty, determine which party actually exercised the right to open and close. Consequently, we cannot say there was any harm. Point of error three is overruled.

■ Citing *Transportation Ins. Co. v. Moriel,* 879 S.W.2d 10 (Tex.1994), Hawthorne argues in point of error four that the trial court erred in failing to bifurcate the exemplary damages issue from the trial on the merits. Hawthorne is correct in citing *Moriel* for the proposition that if presented with a timely motion to bifurcate, the trial court should bifurcate the determination of the amount of punitive damages from the remaining issues. *Id.* at 30. The question at hand is whether this requirement applies to a

case decided prior to the *Moriel* decision in June 1994. The general rule is that the Supreme Court's decisions apply retrospectively unless otherwise stated. *See Elbaor v. Smith*, 845 S.W.2d 240, 250 (Tex.1992).

In *Moriel*, the court specifically stated that the procedural standards announced "apply to all punitive damage cases tried in the future." *Moriel*, 879 S.W.2d at 26. That holding appeared to have settled the matter until a case decided two weeks after *Moriel* declared that it "should be applied to a pending case in which a party has preserved the complaint that the court of appeals failed to properly scrutinize a punitive damage award." *Ellis County State Bank v. Keever*, 888 S.W.2d 790, 799 (Tex. 1994). A reasonable interpretation of the Supreme Court's holdings in those two cases dictates the conclusion that bifurcation is prospective after *Moriel*, while the requirement of scrutiny of a punitive damage award in accordance with the *Kraus* factors[1] is to be applied retrospectively to those pending appellate cases which have preserved a complaint concerning the failure of the court to properly scrutinize a punitive damage award. *See St. Elizabeth Hospital v. Graham*, 883 S.W.2d 433, 436 (Tex.App.—Beaumont 1994, writ denied).

The instant case was tried in 1993 prior to *Moriel*. Consequently, the requirement of a bifurcated trial upon timely motion does not apply. The trial court's decision to try the liability and exemplary damages issues together and to allow testimony as to a person's net worth was within the court's discretion. *Lunsford v. Morris*, 746 S.W.2d 471, 473 (Tex.1988). Moreover, there was already testimony in the record regarding Hawthorne's wealth; she owned expensive automobiles, automobile dealerships, and a long distance telephone company—all of which provide an inference of her status as a wealthy person at one time. Her own testimony that, as of August 1992, she had no money at all except $100 in her checking account gave the jury the opportunity to weigh the witnesses' testimony and arrive at its own conclusion. No harm has been shown in allowing testimony as to Hawthorne's net worth. The court did not err in failing to bifurcate the exemplary damages issue from the trial on the merits. Point of error four is overruled.

In points of error five and six, appellant argues that there is no evidence, and, in the alternative, insufficient evidence, to support the jury finding that appellant breached her fiduciary duty. The standard of review for the legal and factual insufficiency of the evidence is well-established. When both legal and factual sufficiency points are raised, we must first review the legal sufficiency point to determine if there is any evidence of probative value to support the jury's findings. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951). The legal sufficiency review requires us to consider only the evidence and inferences that tend to support the jury's findings and to disregard all evidence and inferences to the contrary. *Havner v. E–Z Mart Stores, Inc.*, 825 S.W.2d 456, 458 (Tex. 1992); *Sherman v. First Nat'l Bank in Center, Texas*, 760 S.W.2d 240, 242 (Tex.1988). If there is more than a scintilla of evidence to support the jury's findings, this court may not overturn the judgment on legal sufficiency grounds. *Id.* at 242.

If we determine that the findings are supported by legally sufficient evidence, we must then review the factual sufficiency of the evidence by weighing and considering the evidence both in favor of, and contrary to, the challenged findings. *See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965). The jury's findings must be upheld unless they are so against the great weight and preponderance of the evidence as to be manifestly unjust or erroneous. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex.1986).

In determining whether there is no evidence, or factually insufficient evidence, to support the jury finding that Hawthorne breached her fiduciary duty, we first determine the nature of fiduciary duty and whether or not one exists in this case.

The record is replete with evidence that Cellular Mole was a partnership. In addition

---

1. *See Alamo Nat. Bank v. Kraus*, 616 S.W.2d 908, 910 (Tex.1981).

to Guenther's testimony to that effect, Hawthorne's pleadings state as much, as do her letters to her partners. In her letters of July 17, 1984, March 18, 1986, October 22, 1986, and April 16, 1990, she listed herself as managing partner of Cellular Mole and began her remarks with "Dear Partner." Other evidence of the existence of a partnership is the testimony of Cellular Mole's accountant that Cellular Mole was classified as a partnership for tax return purposes. Furthermore, Guenther's testimony that profits, as well as the initial costs, were to be equally shared is evidence of the partnership. *See McCulley Fine Arts Gallery, Inc. v. X Partners*, 860 S.W.2d 473, 478 (Tex.App.—El Paso 1993, no writ).

■ In a partnership relationship, Texas law undeniably recognizes that partners owe one another a fiduciary duty.[2] *Fitz–Gerald v. Hull*, 150 Tex. 39, 237 S.W.2d 256, 264–265 (1951); *Bohatch v. Butler & Binion*, 905 S.W.2d 597, 602 (Tex.App.—Houston [14th Dist.] 1995, writ requested); *Kunz v. Huddleston*, 546 S.W.2d 685, 688 (Tex.Civ.App.—El Paso 1977, writ ref'd n.r.e.). Partners owe each other and their partnership a duty in the nature of a fiduciary duty in the conduct and winding up of partnership business and are liable for a breach of that duty. *M.R. Champion, Inc. v. Mizell*, 904 S.W.2d 617, 618 (Tex.1995). A managing partner owes his co-partners the highest fiduciary duty recognized by law. *McLendon v. McLendon*, 862 S.W.2d 662, 676 (Tex.App.—Dallas 1993, writ denied).

■ Under either the Texas Uniform Partnership Act or the common law, partners owe the following fiduciary duties to each other:

(a) Full disclosure of all matters affecting the partnership;

(b) Accounting for all partnership profits and property, i.e., refraining from self-dealing; and

(c) Refraining from competition with the partnership.

*Bohatch*, 905 S.W.2d at 602.

■ A fiduciary owes to its principal a strict duty of "good faith and candor," as well as "the general duty of *full disclosure* respecting matters affecting the principal's interests"; there is a "general prohibition against the fiduciary's using the relationship to benefit his personal interest, except with the full knowledge and consent of the principal." *Chien v. Chen*, 759 S.W.2d 484, 495 (Tex.App.—Austin 1988, no writ). A managing partner has a duty to administer the partnership affairs solely for the benefit of the partnership. *McLendon*, 862 S.W.2d at 676. A managing partner may not place himself in a position where it benefits him to violate this duty. *Id.* The evidence, therefore, demonstrates the existence of a partnership, and both common law and statute dictate a fiduciary relationship between the partners.

■ In addition to the existence of a partnership, the evidence supported the jury's finding that Lyn Hawthorne breached her fiduciary duty to Jack Guenther. Hawthorne admitted receiving and spending Guenther's share of the partnership proceeds. In addition, she failed to account to Guenther for his share of the proceeds. There is evidence in the record that she loaned herself large sums of money from the partnership's funds without informing the other partners, without preparing promissory notes to evidence the loans, and without paying interest on the loans. She also instructed Lynch, the partnership's accountant, to withhold information concerning the partnership from Guenther. Shortly before the major sale of the partnership's assets, she purchased for her own benefit the interest of two other partners without informing the remaining partners or giving the partnership the opportunity to purchase the interest. In addition, Hawthorne breached her fiduciary duty by selling substantially all of the assets

---

**2.** Although a new statutory scheme for partnerships was enacted in Texas and became effective on January 1, 1994, the older statutory scheme, Texas Uniform Partnership Act (TUPA)(Tex.Rev.Civ.Stat.Ann. art. 6132b (Vernon 1970) does not expire until January 1, 1999 (art. 6132b § 47(b)). In essence, the older statutory scheme will continue to apply to partnerships formed prior to January 1, 1994 until January 1, 1999, except for those pre–1994 partnerships that expressly elect to have the new law applied immediately.

of the partnership without first informing Guenther. Appellant also made immediate distributions to herself and to her husband while withholding funds from the other partners.

Hawthorne's defense to the withholding of Guenther's share of the funds was the existence of an alleged agreement between her and Guenther whereby she would offset her losses on investments recommended by him with the proceeds from the sale of the cellular franchises. The only evidence of such an agreement was her testimony and that of her husband, Monty Hawthorne, who claimed that he listened in on a phone conversation between his wife and Guenther when the matter was discussed.

The evidence reveals that Lyn Hawthorne failed to disclose material facts concerning the partnership, failed to account for all partnership profits, and engaged in self-dealing. In weighing the evidence before it, the jury concluded that Hawthorne breached her fiduciary duty to Guenther. There was more than a scintilla of evidence of her breach of her fiduciary duty.

In considering Hawthorne's factual insufficiency evidence points, we must remain cognizant of the fact that it is for the jury, as the trier of fact, to judge the credibility of the witnesses, to assign the weight to be given their testimony, and to resolve any conflicts or inconsistencies in the testimony. *Murphy v. Canion*, 797 S.W.2d 944, 948 (Tex.App.— Houston [14th Dist.] 1990, no writ). We may not substitute our judgment for that of the jury if the challenged finding is supported by some evidence of probative value and is not against the great weight and preponderance of the evidence. *Alford, Meroney & Co. v. Rowe*, 619 S.W.2d 210, 213 (Tex.Civ.App.— Amarillo 1981, writ ref'd n.r.e.). Based on our review of the evidence as set out above, we find the evidence was both legally and factually sufficient for the jury to make the determination that Hawthorne breached her fiduciary duty. Points of error five and six are overruled.

In point of error seven, Hawthorne alleges there is no jury finding to support the award of exemplary damages. Initially, she objects to the improper conditioning of Jury Ques-

tion 5. However, Hawthorne has waived any complaint regarding a defect in Question 5, since there is no record on appeal of the charge conference and no record of any objections or requests regarding the charge. Each party waives the right to complain of error in the charge unless a proper objection or request for submission is made. TEX. R.CIV.P. 272 provides, in part, as follows:

> It [the charge] shall be submitted to the respective parties or their attorneys for their inspection, and a reasonable time given them in which to examine and present objections thereto outside the presence of the jury, which objections shall in every instance be presented to the court in writing, or be dictated to the court reporter in the presence of the court and opposing counsel, before the charge is read to the jury. All objections not so presented shall be considered as waived....

As the Texas Supreme Court declared in *State Dept. of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 241 (Tex.1992), "[t]here should be but one test for determining if a party has preserved error in the jury charge, and that is whether the party made the trial court aware of the complaint, timely and plainly, and obtained a ruling." Without a record of the complaint and ruling on Hawthorne's objection to Question 5, she has waived her complaint regarding it.

The focus of appellant's argument in point of error seven is the omission of a finding in the charge that the "alleged breach of fiduciary duty by the appellant was done so intentionally, fraudulently, maliciously, or involved self-dealing." Without that finding, Hawthorne argues, there is no support for the exemplary damages award.

Pursuant to TEX.R.CIV.P. 279, where issues are omitted which constitute only a part of a complete and independent ground and other issues necessarily referable to that ground are submitted and answered, the omitted elements are deemed found in support of the judgment if no objection is made and they are supported by some evidence. *Ramos v. Frito–Lay, Inc.*, 784 S.W.2d 667, 668 (Tex. 1990). The immediate question in the instant case is whether there is an omitted element

in the charge. In other words, is an additional finding of malice, fraud, intent, or self-dealing necessary to support an award of exemplary damages for breach of fiduciary duty, and, if so, which one?

■ Regarding exemplary damages, the general rule is that punitive damages can be awarded when a tort is committed willfully or maliciously. *Durand v. Moore*, 879 S.W.2d 196, 202 (Tex.App.—Houston [14th Dist.] 1994, no writ). The breach of a fiduciary duty being a tort, Texas courts have held that exemplary damages are recoverable for such a breach. *Murphy v. Canion*, 797 S.W.2d at 949.

■ Unlike such grounds of recovery as conversion or unjust enrichment, malice is not a required element of exemplary damages where there is an intentional breach of fiduciary duty. *InterFirst Bank Dallas, N.A. v. Risser*, 739 S.W.2d 882, 907 (Tex. App.—Texarkana 1987, no writ). As stated by various courts of appeal, the question regarding breach of fiduciary duty is not whether there is intent to injure but rather whether one with a fiduciary duty intended to gain additional benefit for himself. *Edwards v. Holleman*, 893 S.W.2d 115, 120 (Tex.App.—Houston [1st Dist.] 1995, writ denied); *Cheek v. Humphreys*, 800 S.W.2d 596, 599 (Tex.App.—Houston [14th Dist.] 1990, writ denied); *Kirby v. Cruce*, 688 S.W.2d 161, 167 (Tex.App.—Dallas 1985, writ ref'd n.r.e.).

An award of exemplary damages is, therefore, supported by a finding that the partner's breach of fiduciary duty was willful and intentional. *See International Bankers Life Ins. Co. v. Holloway*, 368 S.W.2d 567, 583–584 (Tex.1963); *Annesley v. Tricentrol Oil Trading, Inc.*, 841 S.W.2d 908, 910 (Tex. App.—Houston [14th Dist.] 1992, writ denied); *Murphy v. Canion*, 797 S.W.2d at 949; *InterFirst Bank Dallas, N.A. v. Risser*, 739 S.W.2d at 907.

■ An additional element, besides the jury findings of breach of fiduciary duty and the award of a sum for exemplary damages, is, therefore, required. It is not enough that the jury has found an amount for exemplary damages; there must be a finding of an aggravating factor, whether it be intent, self-dealing, or malice. In the instant case, there was no such finding. Question 3 asked if appellant breached her fiduciary duty; question 4 dealt with compensatory damages; question 5 asked about exemplary damages. A question on the aggravating factor necessary to support an award of punitive damages was omitted.

■ Pursuant to Rule 279, when there is an omitted finding, that finding is deemed in support of the judgment if the opposing party does not object to its omission and there is factually sufficient evidence to support the omitted finding. As noted above, Hawthorne did not preserve any complaints regarding the charge, since there is no record on appeal of the charge conference. Consequently, we are left with the question of whether there is factually sufficient evidence in the record to support the omitted element of Hawthorne's intent to gain an additional benefit for herself through the partnership. There is evidence in the record that:

1. Hawthorne failed to distribute Guenther's portion of the proceeds of the partnership;

2. Hawthorne admitted at trial (in deposition testimony) receiving and spending Guenther's share of the partnership proceeds, amounting to slightly more than $440,000.00;

3. There was evidence that Hawthorne loaned herself large sums of money from the partnership's funds, without informing the other partners, without preparing promissory notes to evidence the loans, and without paying interest on the loans;

4. Hawthorne instructed Bert Lynch, the partnership's accountant, to withhold information concerning the partnership from Guenther;

5. Hawthorne purchased for her own benefit the interests of two other partners shortly before the major sale of the partnership's assets without informing the remaining partners or giving the partnership the opportunity to purchase the interest;

6. Hawthorne sold substantially all of the assets of the partnership without first informing Guenther; and

7. Hawthorne made prompt distributions to herself and her husband and intentionally failed to distribute to Guenther his share.

Based on the conduct outlined above, it is apparent that there is some evidence to support the finding of intent. The omitted element is, therefore, deemed in support of the judgment. With the deemed element of intent, there is a finding which supports the exemplary damages award. Point of error seven is overruled.

■ In point of error eight, appellant argues there was legally insufficient evidence to support the exemplary damages award. However, having failed to raise that issue in a motion for judgment notwithstanding the verdict, a motion for instructed verdict, objection to submission of issue to jury, motion to disregard jury's answer to a vital fact issue, or motion for new trial, Hawthorne did not preserve her complaint and it is waived. *T.O. Stanley Boot Co., Inc. v. Bank of El Paso,* 847 S.W.2d 218, 220 (Tex.1992). The same is true of any factual insufficiency point regarding exemplary damages raised by point of error eight. Such a complaint is not preserved, because it was not raised in the motion for new trial. *Cecil v. Smith,* 804 S.W.2d 509, 510–511 (Tex.1991). Point of error eight is overruled.

■ Point of error nine, which complains of the excessiveness of the exemplary damages award and which calls for a remittitur, was not preserved in a motion for new trial or motion for remittitur and is waived on appeal. *McDade v. Texas Commerce Bank, Nat. Ass'n,* 822 S.W.2d 713, 721 (Tex.App.—Houston [1st Dist.] 1991, writ denied); Tex. R.Civ.P. 324(b)(4). Point of error nine is overruled.

Having overruled all appellant's points of error, we affirm the judgment of the court below.

AFFIRMED.