NO. 07-04-0434-CV


 NO. 07-04-0435-CV

 NO. 07-04-0436-CV

 NO. 07-04-0437-CV


IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL A



SEPTEMBER 8, 2004



______________________________




IN RE ASHLEY GUTIERREZ BY AND THROUGH





HER NEXT FRIEND MICHELLE CORDOVA, RELATOR



IN RE JOSEPH ALARCON GONZALEZ, RELATOR



_________________________________






Before JOHNSON, C.J., and REAVIS and CAMPBELL, JJ.


MEMORANDUM OPINION ON PETITIONS FOR WRIT OF MANDAMUS


AND PETITIONS FOR WRIT OF PROHIBITION



 By these original proceedings, Relators Ashley Gutierrez, by and through her next
friend Michelle Cordova, and Joseph Alarcon Gonzalez, natural parents of Ashley
Gutierrez, seek a writ of mandamus denying "the standing of " Jeffrey Donald Gurney and
Alicia Munoz Gurney to pursue "their second cause of action" relating to cause number
54,925-B, District Court, Randall County, Texas. They also request that we issue a writ of
prohibition that the Honorable John Board, Judge of the 181st District Court, and the
Honorable James Anderson, Judge of the County Court at Law of Randall County, not
proceed with hearings in cause numbers 51,715-B and 54,925-B until a ruling on the
petitions for writ of mandamus.

 A writ of mandamus will only issue to correct a clear abuse of discretion or violation
of a duty imposed by law when there is no adequate remedy at law by appeal. Walker v,
Packer, 827 S.W.2d 833, 837-38 (Tex. 1992). Moreover, an appeal, not an original
proceeding, is the appropriate method to remedy a trial court's failure to give preclusive
effect to a final judgment and thus appellate courts have no authority to issue writs of
prohibition to protect unappealed judgments. See Holloway v. Fifth Court of Appeals, 767
S.W.2d 680, 683 (Tex. 1989). Accordingly, the petitions for writ of mandamus and writ of
prohibition are denied.

 Per Curiam



w Roman"> In March of 1997, appellant and her boyfriend, Frank, purchased a car at a time
when appellant admitted that she had been drinking. They washed the car at their home
while the two girls sat in the back seat. When they were finished, appellant drove the car
with its four occupants from their home at 318 Miller Street in Hereford to her brother's
house at 310 Miller Street to get some cigarettes. While they were there, appellant averred
that her brother's children began cursing her and Frank and an argument ensued. As she
left her brother's house, she said the children began throwing rocks at the car, which broke
the windshield, the rear window and the driver's side window. Being frightened, she said,
she drove past her house to get to a telephone and call the police. Apparently, as she did
so, she encountered the police and they arrested her for driving while intoxicated. As a
result of her arrest, her two daughters were placed with the Texas Department of
Protective and Regulatory Services (the Department).

 In March 2000, the Department filed its petition seeking conservatorship of the
children and the termination of appellant's parental rights, which resulted in the trial court
order giving rise to this appeal. In its petition, the Department alleged two grounds for
termination, first, pursuant to Family Code § 161.001(1)(D), that appellant knowingly placed
her two daughters in conditions or surroundings that endangered their physical or
emotional well-being, and second, pursuant to § 161.001(1)(E), that she had knowingly
placed the children with people who engaged in conduct endangering their physical or
emotional well-being. Pursuant to § 161.001(2), it also alleged that termination would be
in the best interest of the children.

 A hearing on the petition was set for April 30, 2001, and on April 26, 2001, 
appellant filed a motion seeking a continuance of the trial date. As a basis for the
continuance, appellant alleged she needed the essential testimony of Valdo Mendoza, the
natural father of her daughter Vanessa. The motion was overruled and the trial
commenced on the April 30 date.

 At trial, the Department's sole witness was Ben Larson, the caseworker assigned
to the case after appellant's arrest. After obtaining temporary custody of the children, as
a part of his duty, Larson began preparing a report on appellant and her family and began
a check on whether the children could be placed with family members. It was his
conclusion that the children could not be placed with family members because all the
relatives who were identified either had significant criminal histories, had their parental
rights terminated, or had problems with drug use. He opined that substance abuse
problems were "endemic with all the family members." 

 Larson also averred that appellant did not maintain a stable home for the children,
often moving from one address to another. The only specific physical problem the children
had during the Department's temporary custody was that Stacey needed some fillings in
her teeth. He recounted his efforts to create a service plan, including treatment for
appellant in Plainview and El Paso, in order that the children could be returned to her
custody. He concluded that the Plainview Women's Center was well suited for appellant
and the children because it is a residential program in which the children stay with their
parents. Although participants typically spend six months in the program, appellant left six
days later, informing Larson she left to be with Frank.

 In the summer of 1999, appellant was admitted to a treatment program in El Paso. 
After a few days, she was admitted to a hospital in El Paso. Upon her release from the
hospital, she went to Chicago to be with Frank. Because she was on probation from her
DWI conviction, she was arrested in Chicago, her probation revoked, and sentenced to
serve six years confinement in the Institutional Division of the Department of Criminal
Justice. It was after this revocation that the Department began its termination proceedings.

 When cross-examined, Larson testified that there had been an allegation of sexual
abuse of the children by appellant and Frank in 1997, that was "validated" in 1997, before
appellant and the children were placed in the Plainview treatment facility in 1998. 
However, under continued cross-examination, Larson stated that the children were placed
with appellant in the Plainview facility because the abuse was "mild" and the Department
was "not one hundred percent sure" it occurred or it would have sought criminal
prosecution. The only description Larson gave of the alleged abuse was that appellant had
used Stacey to get Frank "excited."

 After appellant was incarcerated, in recognition of the programs available, the
Department made changes in its service plan. Larson was not aware if appellant
participated in prison treatment programs.

 Appellant testified and recited the events giving rise to her arrest for driving while
intoxicated. She admitted she had an alcohol problem and had voluntarily left the
Plainview treatment facility in part because she wanted to drink. After leaving Plainview,
she averred, she sought treatment through an Amarillo program and continued to have
regular visitation with her children. She acknowledged that some of her actions created
a risk of losing her children and admitted that she had sought to make changes in her life,
but had been unable to do so.

 Appellant went on to explain her continued efforts to change while she was in
prison, including doing work toward her G.E.D., participating in Alcoholics Anonymous, a
job training program, parenting classes, and actively practicing her religion. She felt that
the programs had a positive effect on her, that she took better care of herself, and as a
result, she felt healthier about herself. In the course of her testimony, she introduced
certificates showing her participation in the programs. She also stated that she had
relationships with members of her church in Hereford who would provide her support after
she was released from prison.

 Under cross-examination, appellant said her mother often helped her with the
children, but she averred she could care for them even if she was drunk. She
acknowledged being hospitalized for short periods four or five times from 1994 to 1997 as
a result of her diabetes. She also admitted that she continued drinking, even though
doctors told her that was "one of the worst things" a diabetic could do. She also admitted 
using cocaine with Frank in December 1998. 

 Appellant initially assigns error to the trial court's denial of her motion for a
continuance to obtain the testimony of Vanessa's father, Valdo Mendoza. Continuances
for the purpose of securing testimony are governed by Rules of Civil Procedure 251 and
252. Rule 251 mandates that to be entitled to a continuance, a movant must make a
showing of "sufficient cause, supported by affidavit," or that the parties agree to the
continuance or that entitlement to the continuance exists by operation of law.
Parenthetically, the motion in question here is not based upon the consent of the parties
or by operation of law. Rule 252 provides that if the motion is based upon a want of
testimony, the moving party must provide an affidavit showing the testimony is material,
the diligence used to secure the testimony, the reason the testimony has not been
secured, and the name and address of the witness. On a first motion, as here, the movant
need not establish the testimony cannot be secured from another source.

 In her motion, appellant noted the April 30, 2001 trial setting and alleged that she
had no information on Mendoza's location before April 23, 2001, when a child support
order was filed with the district clerk showing the name of his employer in Maryland. She
had been unable to verify the information as of the April 25, 2001 date of the motion. 
However, the motion stated that Mendoza "may well possess relevant and valuable
evidence." Appellant swore to the truth of the facts stated in the motion, but did not
present a separate affidavit. (2) Although the motion was signed by appellant's attorney, his
signature was not verified and he did not provide an affidavit.

 The denial of a motion for continuance is measured by an abuse of discretion
standard. We presume the trial court has not abused its discretion when the motion for
continuance does not conform to the provisions of the rules. Garcia v. Texas Employers
Ins. Assn., 622 S.W.2d 626, 630 (Tex.App.-Amarillo 1981, writ ref'd n.r.e.).

 Appellant asserts the trial court erred in denying the motion because it was in full
compliance with Rule 252 and the trial court was "made aware of what [she] expected to
prove with the absent testimony." Although she does not make record references in her
brief, our perusal of the record shows that a hearing on the motion was held during which
appellant argued that Mendoza could "shed light on" the nature of the relationship and
whether he contributed to her alcohol use. In response, the Department pointed out that
Mendoza had not had contact with appellant or his daughter for several years. 

 As we have noted, Rule 252 mandates that a motion for continuance to secure
testimony be supported by an affidavit showing the testimony is material, the diligence
used to secure the testimony, and the reason the testimony has not been secured. 
Accepting appellant's verification of the motion as satisfying the affidavit requirement, she
merely states in the motion that Mendoza "may well" have relevant information. That is not
sufficient to satisfy the Rule 252 requirement. Additionally, counsel's unsworn statements
at the hearing on the continuance motion as to what Mendoza's testimony might be added
little to the written motion and also fell short of meeting the showing required by the rule. 
Additionally, the motion completely fails to show the diligence used to secure Mendoza's
testimony. Indeed, counsel's argument at the motion hearing indicated a lack of diligence. 
At the beginning of the hearing, counsel stated, "I guess everybody had an address for Mr.
Mendoza except me." Thus, under the record before us, we cannot say the trial court
abused its discretion in denying appellant a continuance. Appellant's first issue is
overruled.

 In her second issue, appellant challenges the factual sufficiency of the evidence to
sustain either of the two grounds alleged as a basis for the termination of her parental
rights. Reiterated, as a basis for termination, the Department alleged that appellant had
1) knowingly placed or allowed the children to remain in conditions that endangered the
physical or emotional well-being of the children, and 2) engaged in conduct or knowingly
placed the children with people who engaged in conduct that endangered the physical or
emotional well-being of the children. The Department also alleged that termination would
be in the best interest of the children.

 Termination requires the Department to establish one of the statutory grounds by
clear and convincing evidence. Tex. Fam. Code Ann. § 161.001 (Vernon 2002);
Richardson v. Green, 677 S.W.2d 497, 499 (Tex. 1984). This heightened standard is
required because a termination of parental rights affects a fundamental constitutional right. 
Holick v. Smith, 685 S.W.2d 18, 20 (Tex. 1985). 

 Our supreme court, In the Interest of C.H., 89 S.W.3d 17 (Tex. 2002), recently
resolved the split previously existing between the courts of appeals as to the standard to
be used in determining factual sufficiency challenges in cases such as this one. The court
explicated that in cases in which the burden is to establish a right to judgment by "clear and
convincing evidence" rather than the preponderance of the evidence standard traditionally
used in civil cases, "the appellate standard for reviewing termination findings is whether the
evidence is such that a factfinder could reasonably form a firm belief or conviction about
the truth of the State's allegations." Id. at 25. That standard focuses on whether a
reasonable factfinder could form a firm conviction or belief while retaining the deference
that an appellate court must have for the factfinder's role. Id. at 26. See also In the
Interest of G.M., 596 S.W.2d 846, 847 (Tex. 1980).

 In support of this point, appellant argues that 1) termination may not be based upon
a single act or omission, (3) and 2) the Department improperly relies upon appellant's failure
to meet their expectations rather than establishing she placed the children's physical or
emotional well-being at risk. In support of her second argument, appellant references the
established rule that the term "endanger" as used in Chapter 161 of the Family Code
means more than a threat of metaphysical injury or the possible effects of a less-than-ideal
family environment. Tex. Dept. of Human Services v. Boyd, 727 S.W.2d 531, 533 (Tex.
1987). Finally, appellant argues that the facts of this case are similar to those in In re
K.C.M., 4 S.W.3d 392 (Tex. App.-Houston [1st Dist.] 1999, pet. denied), in which the
appellate court reversed a judgment terminating parental rights. In K.C.M., the Department
sought termination of the parental rights of a mother who was a long time marijuana user
and who had smoked that drug at the end of her pregnancy with K.C.M. She also worked
as a prostitute. She admitted to the regular use of crack cocaine, but never used any
drugs in the presence of her child. Although the Department determined that the child's
maternal grandparents were not suitable to care for the child, it determined that his
paternal grandmother would be suitable. The mother was arrested for possession of a
small amount of cocaine and sentenced to one year's confinement. At the time of trial, she
had completed a G.E.D. course and was awaiting test results. She attended Alcoholics
Anonymous programs, completed life skills and career exploration courses, actively sought
information about K.C.M., and was to be released from confinement within 75 days. It was
upon that evidence that the appellate court found the evidence insufficient to support
termination and reversed the trial court termination judgment. 

 We believe the facts in K.C.M. are distinguishable from those before us. In K.C.M.,
the only evidence of endangerment was the mother's drug use. In contrast, the record
here shows appellant's conduct created a much more tangible risk of injury to her children. 
In K.C.M., the mother began treatment and education immediately on entering jail and,
more importantly, had completed three of those programs, including a G.E.D. program. 
Appellant did not participate in programs until a few months before trial and had not
completed any of the programs. In K.C.M., the child was placed with a relative and the
mother would be released within 75 days. Here, appellant will not be available to care for
the children for several years and the children could not be placed with a family member,
requiring them to remain in foster care for an extended period. 

 Additionally, here the initial act that brought appellant to the attention of the
Department was not the sole basis supporting a finding of endangerment. Appellant does
not dispute that driving while intoxicated with the children in the car placed them at risk. 
Even so, in reviewing that evidence, that risk must be evaluated against the undisputed
fact that her destination was only four houses down from her home and there is nothing
in the record to show that she had ever driven under the influence of alcohol with the
children in the car on any other occasion.

 However, in evaluating the evidence here, we must also consider Larson's testimony
received by the court that appellant's conduct and habits clearly endangered the children's
well-being. Additionally, the jury could consider that although appellant acknowledged that
she had placed the children at risk when she drove while intoxicated, the credibility of that
acknowledgment was weakened by her insistence that she could take care of them while
she was drunk. The jury could also have found appellant's history of alcohol abuse and the
resulting hospitalization on several occasions was evidence that she had endangered the
children's well being on those occasions. The fact that appellant had relied on her mother
to care for the children on occasion placed them at risk because of evidence that the
mother had her parental rights terminated on two occasions and had a history of drug use. 
Moreover, the evidence that appellant and the children moved frequently could support an
inference of risk to the children's emotional well being. Appellant's departure from the
Plainview Women's Center, at least in part because she wanted to drink, also could be
interpreted that she placed a higher priority on her desire for alcohol than in remaining with
her children.

 In addition to her own testimony, the evidence appellant presented controverting the
Department's evidence consisted of testimony from members of her church concerning her
participation in church and certificates showing she had participated in prison treatment
and education programs. However, it is worthy of note that appellant's participation in the
programs began a year after she was in prison and only a short time before the trial,
circumstances from which a trier of fact could reasonably infer her participation was solely
for purposes of the trial. It is axiomatic that the jury, as the exclusive finders of fact, was
free to assess the weight to be given the evidence and the credibility of the witnesses. 
Leyva v. Pacheco, 163 Tex. 638, 358 S.W.2d 547, 549 (1962). The jury is free to believe
one witness and disbelieve another and to resolve any inconsistencies in any testimony. 
McGalliard v. Kuhlmann, 722 S.W.2d 694, 697 (Tex. 1986).

 Under this record, the evidence is sufficient that the jury, as factfinder, could
reasonably form a firm conclusion or belief about the truth of the Department's allegations. 
Appellant's second point is overruled. In sum, both of appellant's points are overruled and
the judgment of the trial court is affirmed. 

 

 John T. Boyd

 Senior Justice
1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. 
Tex. Gov't Code Ann. §75.002(a)(1) (Vernon Supp. 2003). 
2. In Hawthorne v. Guenther, 917 S.W.2d 924, 929 (Tex. App.-Beaumont 1996, writ
denied), the court opined that a separate affidavit is not required if the motion for
continuance is verified.
3. See In re K.M.M., 993 S.W.2d 225 (Tex. App.-Eastland 1999, no writ).